UNITED STATES of America, Appellee,

v.

Aida GONZALES–BENITEZ, Appellant.

UNITED STATES of America, Appellee,

v.

Ambrosio HERNANDEZ–CORONEL, Appellant.

Nos. 75–3749, 75–3718.

United States Court of Appeals, Ninth Circuit.

June 2, 1976.

Bruce Rinaldi (argued), of Verity, Smith, Lacy, Allen & Kearns, Tucson, Ariz., for appellants.

Bruce R. Heurlin, Asst. U. S. Atty. (argued), Tucson, Ariz., for appellee.

## OPINION

Before SNEED and KENNEDY, Circuit Judges, and CONTI,* District Judge.

KENNEDY, Circuit Judge:

Aida Gonzales-Benitez and Ambrosio Hernandez-Coronel were convicted for importing and distributing heroin in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 841(a)(1). On appeal they argue that the trial court gave incorrect jury instructions on the defense of entrapment and that the court erred in various other respects. We consider these contentions below, after stating the facts.[1]

Ana Maria Gutierrez, a paid informer who had worked on prior occasions with the Drug Enforcement Administration, initiated a series of telephone conversations with appellant Gonzales, who was staying in Culiacan, Mexico. Gonzales indicated she could obtain good quality heroin for the informant. Gonzales asked if Gutierrez would distribute the narcotic to reliable persons, and Gutierrez responded that her buyers could be trusted. In June Mrs. Gutierrez and her daughter traveled to Culiacan, where they spent all day with Gonzales and also met with appellant Hernandez. Together they discussed delivery and transportation of heroin in further detail. Gonzales offered to sell 16 ounces to Gutierrez and allow Hernandez to travel to the border

---

* Honorable Samuel Conti, United States District Judge for the Northern District of California, sitting by designation.

1. In stating the facts we are of course bound to read the record in a manner consistent with the jury's verdict, resolving all conflicts in the evidence in favor of the prosecution. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Moore,* 522 F.2d 1068, 1079 (9th Cir. 1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637, 44 U.S.L.W. 3397 (1976).

with Gutierrez for protection, but the informer refused to make a purchase at that time.

There followed other telephone conversations and another meeting in which Mrs. Gutierrez introduced Gonzales to a purported buyer, Hector Berrellez. Berrellez was an agent for the Drug Enforcement Administration.

Thereafter a sale was arranged. It was agreed that Berrellez would take delivery of the drugs within the United States. On the day of the border crossing Mrs. Gutierrez and her daughter met with Gonzales and Hernandez in a hotel room in Nogales, Mexico. Appellants produced 13 ounces of heroin and Hernandez stated he would bring two additional kilograms of heroin the next day. He demonstrated certain belts with pouches which he used to transport heroin on his person.

The heroin was then secreted in Mrs. Gutierrez' purse. Gonzales left and walked across the border by herself, while the other three drove through the border checkpoint with the heroin. The crossing was accomplished in Mrs. Gutierrez' car. Hernandez was in the front seat. He had removed the heroin from the purse and placed it in a grocery bag which he held on his lap. He placed cheese in the bag to mask any heroin smell.

The three met Gonzales on the Arizona side and together they drove to the motel to meet Berrellez, the ostensible buyer. After Berrellez took possession of the heroin, a signal was given and appellants were arrested.

### Voir Dire Questions

On voir dire examination, the court asked prospective jury members if they would be prejudiced against any defendant or witness who spoke Spanish and not English. The court, however, refused to ask a question requested by Hernandez, namely, whether any of the prospective jurors themselves spoke Spanish fluently.

Hernandez argues that since both the appellants and the chief government witness, Mrs. Gutierrez, spoke virtually no English, a Spanish-speaking juror would be capable of better credibility determinations than a juror who was dependent on a translator. He contends his peremptory challenges would have been exercised more wisely if he had the opportunity to select Spanish-speaking jurors.

■■■ The trial court is given wide discretion in directing a voir dire examination that will result in selection of an impartial and qualified panel. *United States v. Heck,* 499 F.2d 778, 790 (9th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974); *United States v. Williams,* 417 F.2d 630, 631 (10th Cir. 1969). While it was within the trial judge's discretion to ask the proffered question, it was clearly not an abuse of discretion to refuse to do so.

### The Best Evidence Argument

Appellants contend the trial court erred in permitting testimony that related their conversations with the informers during a certain meeting in a motel room in Arizona. They claim that since the conversations were recorded on tapes, the tapes themselves, and not testimony of one of the participants, were the "best evidence" of the conversations. We are puzzled that this argument should be advanced so seriously and would not consider it if attorneys for both appellants had not argued the point so strenuously both in their briefs and in the court below. Certainly the trial court was correct in dismissing the objection out of hand.

■■■ The appellants simply misconstrue the purpose and effect of the best evidence rule. The rule does not set up an order of preferred admissibility, which must be followed to prove any fact. It is, rather, a rule applicable only when one seeks to prove the contents of documents or recordings. Fed.R.Evid. 1002. Thus, if the ultimate inquiry had been to discover what sounds were embodied on the tapes in question, the tapes themselves would have been the "best evidence."

However, the content of the tapes was not in itself a factual issue relevant to the case. The inquiry concerned the content of

the conversations. The tape recordings, if intelligible,[2] would have been admissible as evidence of those conversations. But testimony by the participants was equally admissible and was sufficient to establish what was said.

### Sufficiency of the Evidence

■ Appellant Gonzales argues the trial judge erred in refusing to grant a motion for acquittal based on insufficient evidence. Our review of the transcript of testimony at trial shows evidence tending to prove the following: that Gonzales participated in the negotiations for the sale; that she aided in secreting the heroin prior to its being transported across the border; that she then joined Hernandez and the two informers on the United States side to continue their journey; and that she was present when the heroin was transferred to Berrellez. This testimony was contradicted by the appellants. The jury, however, need not have believed the appellants. There was sufficient evidence to support the conclusion that Gonzales was directly concerned in performing the acts charged and hence was guilty of the crimes.

### Entrapment

There was a fundamental inconsistency in the testimony of the appellants and that of the informants. The appellants claimed that Mrs. Gutierrez had suggested the entire importation scheme and that she and her daughter had supplied all of the heroin used in the transaction. On this basis, they claim that they were entrapped, and should therefore have been acquitted.

■ Evidence that government agents participated in a criminal scheme, and in fact suggested it, and even supplied the contraband, is of course highly relevant to the question of predisposition of the accused. A properly instructed jury could find, on such facts, that the appellants were not predisposed to commit the offense charged, but rather were induced to do so by the government agents. We have reviewed the district court's careful and detailed predisposition instruction,[3] and find that it properly advised the jury on this

2. We note that the reason the tapes were not introduced here was that the recording quality was so poor that the court translator was unable to understand and translate them.

3. The trial judge gave the following careful and comprehensive instruction as to entrapment, which we fully approve:

Evidence has been introduced by the defendants that law enforcement officials may have induced the unlawful conduct with which the defendants are charged. If an official of the Government, either acting directly or through an agent, induces or lures an otherwise unwilling person to commit an unlawful act and the person would not have committed the act but for this inducement, that person is not criminally responsible for the act.

The defense of entrapment is based on the policy of the law not to ensnare or entrap innocent persons into the commission of a crime. On the other hand, if the Government did not induce the conduct because the defendant was predisposed or ready and willing to commit the offense and was merely afforded an opportunity by the Government to do so, he may be found guilty provided the Government has proved all of the essential elements of the offense beyond a reasonable doubt.

The Government must prove beyond a reasonable doubt that the defendant was not induced to commit the unlawful conduct with which he is charged but that the defendant was merely afforded an opportunity to commit the offense, being predisposed or ready to do so.

Inducement may take different forms, such as persuasion, false representations or like tactics. However, law enforcement officials are not precluded from utilizing artifice and stratagem such as the use of decoys or undercover agents or assuming false identity to apprehend persons engaged in a criminal enterprise provided that they merely afford opportunities or facilities for the commission of an offense by one already predisposed or ready to commit it.

It is for you to determine on the basis of all of the evidence whether the Government has proved beyond a reasonable doubt that it did not induce the defendants to commit the offenses with which they are charged. If you have a reasonable doubt whether or not a defendant was induced to commit the offenses by activity of law enforcement officials of the Government or their agents, you must find him not guilty.

issue. We must conclude from the jury's verdict that it either disbelieved appellants' story, or that, while believing appellants, it concluded that they were, in any case, predisposed to commit the offense.

■ Appellants, however, advance the theory that they should have been acquitted, regardless of predisposition, if the jury believed that the government agents supplied the contraband. They therefore claim error in the district court's refusal to give the following instruction:

> If you find that a government agent supplied or imported into the United States the restricted substance which the Defendant is accused of having distributed in the United States, you must find that the Defendant had been entrapped as a matter of law.

The Supreme Court's opinion this term in *United States v. Hampton,* —— U.S. ——, 96 S.Ct. 1646, 48 L.Ed.2d 113, 44 U.S.L.W. 4542 (1976) is dispositive of this issue. In *Hampton* a majority of the Justices ruled that where the defendant was predisposed to commit the offense, he could not demand acquittal solely on the ground that the contraband was supplied by the government. —— U.S. ——, 96 S.Ct. 1646, 48 L.Ed.2d 113, 44 U.S.L.W. at 4543 (opinion of Rehnquist, J.); *id.* —— U.S. ——, 96 S.Ct. 1646, 48 L.Ed.2d 113, 44 U.S.L.W. at 4544 (Powell, J., concurring).

■ This, however, does not end the analysis. *Hampton* left open the possibility that the conviction of a predisposed defendant may be reversed where the government's involvement in the criminal scheme reaches such an outrageous level as to violate due process. —— U.S. ——, 96 S.Ct. 1646, 48 L.Ed.2d 113, 44 U.S.L.W. at 4544 (Powell, J. concurring); *id.* —— U.S. ——, 96 S.Ct. 1646, 48 L.Ed.2d 113, 44 U.S.L.W. at 4546 (Brennan, J., dissenting). In the instant case, however, the appellants alleged only that the government agents provided the contraband in question. Even if this version of the events preceding the arrest is accepted as true, appellants were not denied due process, for such conduct falls well within the bounds sanctioned by

the Supreme Court in *Hampton.* The failure to give the requested instruction was not error.

AFFIRMED.