FIDELITY & DEPOSIT COMPANY OF MARYLAND, Appellant,

v.

STROMBERG SHEET METAL WORKS, INC., Appellee.

No. 85–249.

District of Columbia Court of Appeals.

Argued Nov. 7, 1985.
Decided Oct. 28, 1987.

James K. Foley, Washington, D.C., for appellant.

James Buckley Ostmann, Washington, D.C., for appellee.

Before MACK, ROGERS and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This is an appeal from an order of the Superior Court of the District of Columbia granting recovery to plaintiff Stromberg Sheet Metal Works under a payment bond issued by defendant Fidelity & Deposit Company of Maryland. Appellant challenges the jurisdiction of the Superior Court to entertain the action, and also claims error in the application of the law of the case doctrine and the award of attorneys' fees. We hold that plaintiff's complaint must be dismissed for want of jurisdiction, but sustain the award of attorneys' fees.

I

On July 10, 1978, the United States Postal Service entered into a contract with Curtin & Johnson, Inc., under which Curtin & Johnson was to perform certain work at the City Post Office in the District of Columbia. Shortly thereafter, Curtin & Johnson (as principal) and Fidelity & Deposit Company of Maryland (as surety) executed a payment bond to the postal service, binding themselves to be jointly and severally liable for payment for work performed under the contract between Curtin & Johnson and the postal service.

On November 13, 1979, Stromberg Sheet Metal Works contracted with Curtin & Johnson to perform work pursuant to the prime contract between Curtin & Johnson and the postal service. By June 10, 1980, Stromberg had fully performed under the contract. In spite of acceptance of the work by both Curtin & Johnson and the postal service, Stromberg was never paid for any of the work performed.

Stromberg filed suit in Superior Court against Curtin & Johnson[1] on December 15, 1981. Fidelity & Deposit answered the complaint and then filed a motion to dismiss, alleging that Superior Court lacked jurisdiction because the bond was "required and governed by the Miller Act [40 U.S.C. § 270a-d (1982)]," which provides that suit for payment under such bonds be brought in a United States District Court. 40 U.S.C. § 270b. Stromberg filed an opposition to the motion, claiming that under the Postal Reorganization Act, 39 U.S.C. § 401 *et seq.* (1982), the provisions of the Miller Act applied only to performance bonds, not to payment bonds. Following a hearing, the motion was denied, "it appearing to the Court that the provisions of the Miller Act (40 U.S.C. § 270(a) [*sic*] *et seq.*) are not applicable herein pursuant to the provision of the Postal Reorganization Act (39 U.S.C. § 410(b)(4)(B))."

Fidelity & Deposit filed a second motion to dismiss, arguing that the suit was barred by the one-year statute of limitations of the Miller Act because "the payment bond specifically incorporates the Miller Act ... [and] the Postal Contracting Manual specifically states the payment bond involved herein is to be issued pursuant to the Miller Act." Stromberg filed an opposition. Fidelity & Deposit then moved for summary judgment, making the same contentions as it had in the second motion to dismiss.

This motion to dismiss was denied under the doctrine of the law of the case, and Stromberg was awarded $250 in attorneys' fees "since the motion seeks to reargue what was previously decided." The summary judgment motion was also denied by the same order. Fidelity & Deposit moved for reconsideration, but that motion was also denied.

After a trial on facts stipulated by the parties, the trial judge applied the law of the case doctrine, and ordered that judgment be entered for Stromberg. This appeal followed.

## II

If, as appellant contends, the Miller Act, 40 U.S.C. §§ 270a–270d applies to this case, courts of the District of Columbia have no jurisdiction over this matter. 40 U.S.C. § 270b.

■ By its terms, the Miller Act requires generally that before a contract for construction, alteration, or repair of a federal building is awarded, the contractor must furnish to the United States a performance bond, *id.* at § 270a(a)(1), and a payment bond, *id.* at § 270a(a)(2). The performance bond protects the United States because it embodies promises by both the contractor and his surety to the United States that the contractor will perform his contract. On the other hand, the payment bond protects all persons supplying labor or materials to the prime contractor because it embodies promises by the contractor and the surety that debts incurred by the prime contractor for labor and materials will be paid.[2]

Under the Postal Reorganization Act, 39 U.S.C. §§ 101, *et seq.*, the United States Postal Service was established to succeed to the interests of the former Post Office Department. Its status is "an independent establishment of the executive branch of the Government of the United States." 39

---

1. Curtin & Johnson was later dismissed from the suit at the request of the plaintiff.

2. The protection afforded by a payment bond is particularly important to those working under a contract on federal property because although a supplier can usually secure a mechanic's lien against improved property, such a lien cannot attach to federal property. *F.D. Rich Co., Inc. v. Industrial Lumber Co., Inc.*, 417 U.S. 116, 121–22, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703 (1974). The same doctrine applies to property owned by state and local governmental units. "[T]he generally prevailing view is that a mechanic's lien does not attach to and cannot be enforced against public property acquired and used by and for the benefit of the public, in the absence of express statutory provision to that effect." 53 Am.Jur.2d *Mechanics' Liens* § 29 (1970). Likewise, "[t]he general view has been taken that a mechanic's lien cannot be acquired against a public service or quasi-public corporation whose purposes and objects are distinctively public." *Id.* at § 34. Therefore, notwithstanding the expanded status of the Postal Service, *see* note 4, *infra*, it seems doubtful (although we need not decide) that a mechanic's lien may be asserted against its construction projects.

U.S.C. § 201 (1982). It is operated "as a basic and fundamental service provided to the people by the Government of the United States." 39 U.S.C. § 101. It is undisputed that the Miller Act applied to contracts let by the Post Office Department. Under these circumstances, we would expect that a change from preexisting law as significant as that argued by appellant would be fairly discernible from the text of the Postal Reorganization Act and its background.

That Act in many respects sets the Postal Service free from the constraints of federal law generally applicable to federal governmental components, including the bulk of laws dealing with "public or Federal contracts, property, [and] works." 39 U.S.C. § 410(a). However, the Act does provide that a number of federal laws applicable to government contracts shall apply to the Postal Service. In general, these are provisions intended to further broaden economic and social policies and to provide protection to those involved in government contracts, such as the Davis–Bacon, Contract Work Hours Standards, Walsh–Healey and Service Contract Acts, all dealing with wages and other labor standards, and portions of the Civil Rights and Occupational Safety and Health Acts. 39 U.S.C. § 410.

■ The precise issue before us is whether the entire Miller Act is made applicable to the Postal Service or only that portion dealing with performance bonds.[3] The ambiguity arises because of a phrase in parentheses:

"The following provisions shall apply to the Postal Service:

\* \* \* \*

(4) the following provisions of title 40:

\* \* \* \*

(B) sections 270a–270e (known as the Miller Act, relating to performance bonds)...."
39 U.S.C. § 410(b)(4)(B).

Standing alone, appellant's argument that only those provisions of the Miller Act dealing with performance bonds have application might seem to have some force. However, when considered against the background of the Postal Reorganization Act as a whole as discussed above and against a detailed examination of the structure of that portion of the Act, we conclude that its argument lacks merit.

To begin with, the phrase under review is placed within parentheses. On its face, it appears to be intended as a helpful description of what otherwise might be an obscure statutory reference. Of necessity, the description is cryptic rather than inclusive. This can be readily seen in examining closely the precise language before us. The Miller Act is referred to as consisting of five sections,[4] all of which are made applicable to the Postal Service. Yet sections 270b and 270c deal *solely* with payment bonds, and a reference to them would be pointless were the Act to be applicable only with respect to performance bonds.

An examination of the description in parentheses of other statutory references in section 410 reinforces the conclusion that the descriptive phrase was not intended to be all-inclusive. For example, further on in the recitation of applicable statutes, reference is made to "sections 35–45 [of title 41] (known as the Walsh–Healey Act, relating to wages and hours)." Yet those sections deal with several subjects relating to working conditions other than wages and hours, including minimum age requirements, prohibition of convict labor and maintenance of safe and sanitary working conditions, 41 U.S.C. § 35(d), (e). Parenthetical descrip-

---

**3.** Two federal cases involving payment bonds and the Postal Service proceed on the assumption that the Miller Act's provisions requiring payment bonds apply to the Postal Service. *Active Fire Sprinkler Corp. v. U.S. Postal Service,* 811 F.2d 747 (2d Cir.1987) (subcontractor may assert equitable lien against unpaid balance of contract notwithstanding posting of Miller Act payment bond); *Kennedy Electric Co. v. U.S. Postal Service,* 508 F.2d 954 (10th Cir.1975) (equitable remedy available where Postal Service fails to require Miller Act payment bond).

**4.** In fact, section 270e is not part of the original Miller Act.

tions in other portions of section 410 lead to the same conclusion. The Federal Freedom of Information Act, with its extensive provisions, was referred to as "section 552 (public information)" and an entire chapter of title 5 was referred to simply as "chapter 71 (employee policies)." (This portion of the Act has been subsequently amended.)

The two bills originally introduced in the House and Senate, which led to the adoption of the Act, described the Miller Act, the Walsh–Healey Act and the Davis–Bacon Act only by their popular names, which were taken from their sponsors and thus had meaning only to government contract specialists. In the course of passage through the Congress, the further descriptive language giving some sense of the Acts' content was added. Yet we are pointed to nothing in the House, Senate or conference committee reports giving any indication that a substantive change of the magnitude argued by appellant was intended in inserting the additional parenthetical language.[5]

▮ In the face of this history and structure of the Postal Reorganization Act itself, we decline to strain the parenthetical reference in § 410(b)(4)(B) to limit the application of the Miller Act to performance bonds only. We think the entire Act was intended to apply to the Postal Service. Plaintiff's complaint must therefore be dismissed for want of jurisdiction. The order awarding

$250 in attorneys' fees to plaintiff is affirmed.[6]

*So ordered.*

MACK, Associate Judge, dissenting:

I would affirm. It may be surprising that an interpretation by the division majority, of the Postal Reorganization Act (*see* 39 U.S.C. §§ 401 *et seq.* (1982)), defeats the jurisdiction of the Superior Court of the District of Columbia to hear a dispute between a subcontractor and a surety for payment of work fully performed by the subcontractor in the construction of a city post office in the District of Columbia. It may likewise be surprising (if not particularly relevant) that this interpretation (under the circumstances here) may defeat payment altogether of some $32,265.60 indisputedly due the subcontractor for such work fully performed.[1] It, however, is both surprising and relevant that the majority's interpretation is incompatible with the plain language, and the purpose, of the Reorganization Act.

The specific issue is whether Congress intended (as the surety argues) that the federal construction act (the Miller Act, 40 U.S.C. §§ 270a–270e (1982)) apply in its entirety to contracts entered into by the United States Postal Service. The Superior Court denied the motion of the surety to dismiss this action brought by the subcontractor on the ground "that the provisions of the Miller Act [40 U.S.C. §§ 270a *et seq.*] are not applicable herein pursuant to the

---

5. The consent by Congress in the Postal Reorganization Act that the Postal Service may "sue and be sued," 39 U.S.C. § 401 (1982), has constituted a waiver of sovereign immunity that allows significant rights against the Postal Service not available against the United States as such. *See Franchise Tax Board v. U.S. Postal Service,* 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984) (Postal Service subject to state order to withhold delinquent taxes from employee's wages); *Active Fire Sprinkler Corp. v. U.S. Postal Service, supra.* However, "we construe the incorporation of the Miller Act into the Postal Reorganization Act as an addition to any remedies made available by means of the waiver of immunity." *Id.* at 752. *See also* note 2, *supra.*

6. Our holding effectively moots out appellant's law of the case arguments except with respect to the award of attorneys' fees for raising in two

successive motions arguments relating to the applicability of the Miller Act. We think the second motions judge properly invoked the doctrine in awarding attorneys' fees. *P.P.P. Productions, Inc. v. W & L, Inc.,* 418 A.2d 151 (D.C. 1980). Appellant's argument that the award was improper because no hearing was held relies on our decision in *Brady v. Fireman's Fund Ins. Co.,* 484 A.2d 566 (D.C.1984). However, in this case (unlike the situation in *Brady*) appellant had notice in the form of a motion for attorneys' fees filed by appellee before the award was made, and an opportunity to respond.

1. The surety has argued that since this action was not filed in the federal court within the one-year period required by the Miller Act, the subcontractor's claim is barred by the statute of limitations.

provisions of the Postal Reorganization Act [39 U.S.C. § 410 (b)(4)(B) ]." A motion by the surety to strike the motion to dismiss (and for summary judgment) was denied under the law of the case doctrine and the plaintiff awarded attorneys' fees in the amount of $250 for having had to defend against a motion previously decided.

The Postal Reorganization Act, whereby Congress created an independent organization in the executive branch, provides in pertinent part:

> *Except as provided ... no Federal law dealing with public or Federal contracts ... shall apply to the Postal Service.*
>
> (b) The following provisions shall apply to the Postal Service * * * [certain] provisions of title 40: [including] * * * sections 270 a-e (known as the Miller Act, *relating to performance bonds*)....

39 U.S.C. § 410 (1982) (emphasis added).

Thus, in setting forth the federal contracting provisions which would apply to this independent establishment, the Congress used a broad exclusive approach followed by a narrow inclusive one. This is recognized by the majority: "[The] Act in many respects sets the Postal Service free from the constraints of federal law generally applicable to federal governmental components, including the bulk of laws dealing with 'public or Federal contracts, property, [and] works.'" *Ante* at 678. Certainly the Congress could not have been unaware of the substantive provisions of the statute which it selected for inclusion; it could not have been unaware that the Miller Act requires both performance and payment bonds for federal public projects. *See United States v. Brown*, 422 A.2d 1281, 1284 (D.C.1980) (presumption of Congressional awareness of existing statutes). Yet it specifically provided that the provisions of the Miller Act *relating to performance bonds* should apply to the newly recognized postal service. In my view, this specific reference to performance, coupled with the absence of any reference to payment gives credence to appellee's position that Congress did not intend that the provisions of the Miller Act requiring payment bonds be applicable to the postal service establishment. *Id.* (there is a presumption

that change in legislative language intended to produce legislative result). I am not persuaded by the majority's reasoning that the "parenthetical" reference is merely a cryptic way of describing the Miller Act or its reliance on descriptions of other titles. This exercise violates a cardinal principle of statutory construction: where the language of the provision is clear on its face we do not look behind it. "[T]he meaning of a statute must, in the first instance, be sought in the language in which the act if framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Moreover, this language is not entitled to closer scrutiny because it fails to embody legislative intent or yields an absurd or unjust result. *See Auger v. District of Columbia Board of Appeals and Review*, 477 A.2d 196, 211–12 (D.C.1984).

If the legislative history of the Reorganization Act tells us anything, it is to emphasize Congressional intent to limit the application of federal law to the postal service, particularly with respect to contracts. For example, the report of the Senate Post Office and Civil Service Committee states: "The Board of Governors [of the Postal Service] shall have broad authority and shall not, *except as specified,* be subject to Federal laws dealing with contracts ... which in most instances apply to Government agencies." S.REP. No. 91–912, 91st Cong., 2d Sess. 5 (1970) (emphasis added). *See also* H.R.REP. No. 91–1104, 91st Cong., 2d Sess. 26, *reprinted* in 1970 U.S.CODE CONG. & ADMIN.NEWS 3649, 3675 (operation of federal law to postal service generally excluded). Moreover, there are sound practical reasons why the Congress may not have chosen to require that payment bonds, enforceable (under the federal scheme) only in the federal district courts, be a requirement for contracting with the reorganized postal service. It is the United States government which receives the protection of performance bonds. It would follow that the United States would litigate the issue of performance in the United States courts. On the other hand, the payment bonds required by the Miller Act pro-

vide recourse for private parties—the subcontractor or supplier who would be left without a remedy (because of sovereign immunity) when a general contractor becomes insolvent. *See Active Fire Sprinkler Corp. v. United States Postal Service,* 811 F.2d 747 (2d Cir.1987). Now Congress has seen fit to waive the immunity of the postal service. As the majority points out (in note 5) the Reorganization Act specifically provides that the Postal Service may "sue and be sued" (39 U.S.C. § 401), thus constituting a waiver of sovereign immunity that allows the enforcement of significant rights against the Postal Service not available as against the United States as such. *See Franchise Tax Board v. United States Postal Service,* 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984) (Postal Service subject to state order to withhold delinquent taxes from employee's wages). It would follow logically from these changes that the subcontractor performing services for postal authorities would no longer run the risk of being left without a remedy in the absence of a payment bond. Sovereign immunity out of the picture, there would be no necessity that the action be litigated in the federal court. The position which the majority takes today leaves a subcontractor without this option. In my view, the Superior Court properly refused to dismiss this action.