**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Lee WORKINGER,**
**Defendant–Appellant.**

No. 95–30200.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1996.

Decided July 23, 1996.

Robert E. Lindsay and Alan Hechtkopf, United States Department of Justice, Tax Division, and Scott A. Schumacher, United States Department of Justice, Criminal Appeals and Tax Enforcement Policy Section, Tax Division, Washington, D.C., William Fitzgerald and Christopher L. Cardani, Assistant United States Attorneys, Eugene, Oregon, for plaintiff-appellee.

Joseph Wetzel, Wetzel and DeFrang, Portland, Oregon, for defendant-appellant.

Before: REINHARDT, KOZINSKI and FERNANDEZ, Circuit Judges.

Opinion by Judge FERNANDEZ; Partial Concurrence by Judge KOZINSKI.

FERNANDEZ, Circuit Judge:

William Lee Workinger appeals his conviction for willfully failing to pay taxes in violation of 26 U.S.C. § 7203, willfully filing a false income tax return in violation of 26 U.S.C. § 7206(1), and corruptly obstructing and impeding the due administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212(a). We affirm.

## BACKGROUND

On March 23, 1994, Workinger, a dentist licensed to practice in Oregon, was indicted for his participation in an elaborate scheme to conceal his income and assets from the Internal Revenue Service. The heart of his scheme consisted of creating and using various entities to hide income, purposely misstating his income, filing forms which substantially underreported the value and quantity of his financial resources and holdings, and diverting his practice income to his spouse. Among other things, the government accused Workinger of maintaining numerous unreported bank accounts holding substantial unreported funds, depositing business receipts into bank accounts that he had not listed on IRS forms, and failing to disclose real estate which he controlled. The government also alleged that he had misled federal investigators by showing a rental agreement form to prove that he rented a home which he actually owned and by filing false statements of financial condition.

Workinger was indicted in five counts for attempting to evade payment of federal income tax for 1980, 1981, 1983, 1984 and 1985 (Counts 1, 2, 3, 4, and 5 respectively). He was also indicted for making and subscribing his 1987 federal income tax return on which he understated his total income (Count 6). Finally, he was indicted for corruptly obstructing and impeding the due administration of the internal revenue laws by submitting inaccurate financial forms to IRS collection officers on three separate occasions—once on February 17, 1988, and twice on March 29, 1989 (Count 7). Workinger claims that prosecution on the latter count was barred by the statute of limitations.

In 1991, before the indictment issued, Workinger had been interviewed by Donald Johnson, a lawyer representing Workinger's former wife. Although no court reporter was present, Workinger affirmed that he would tell the truth and the conversation was tape-recorded. Mr. Johnson's secretary, who was not present at the interview, then typed a transcription of the conversation. The transcriptions included handwritten notations, numerous interruptions and sections omitted as "inaudible." At trial, the transcript of that interview was received by the court and read verbatim to the jury. By that time, the tapes had been erased. Workinger asserts that the transcript should not have been admitted because it was not the best evidence, was not properly authenticated, and was hearsay.

In the course of the trial, the prosecution called Revenue Agent June Brock to testify as an expert witness. Ms. Brock testified in support of the government's charge that Workinger signed a false 1040 form for 1987

which he did not believe to be correct. Brock testified that $7,855.55 was omitted income "because it was a discount." She further testified that $8,625 was omitted income because the government found that an asset sold by Workinger had no basis in his hands. Workinger claims that this testimony was false.

On January 25, 1995, Workinger was convicted as charged on Counts 6 and 7. On Counts 1 through 5, he was convicted of the lesser included offense of willful failure to pay income taxes. He appealed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

■ The district court's conclusion regarding the applicability of a statute of limitations is a matter of law reviewed de novo. *United States v. Manning,* 56 F.3d 1188, 1195 (9th Cir.1995). In construing a statute, our court's objective "is to ascertain the congressional intent and give effect to the legislative will." *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). This court must first determine whether the plain language makes its meaning reasonably clear. *Negonsott v. Samuels,* 507 U.S. 99, 104–05, 113 S.Ct. 1119, 1122–23, 122 L.Ed.2d 457 (1993). If it is clear, that is the end of the inquiry. *See Sullivan v. Stroop,* 496 U.S. 478, 482, 110 S.Ct. 2499, 2502, 110 L.Ed.2d 438 (1990). "In ascertaining the plain meaning of the statute, [we] must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K–Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988).

■ A district court's evidentiary rulings are reviewed for an abuse of discretion. *Manning,* 56 F.3d at 1196. "Evidentiary rulings will be reversed for abuse of discretion only if such nonconstitutional error more likely than not affected the verdict." *United*

*States v. Corona,* 34 F.3d 876, 882 (9th Cir. 1994).

## DISCUSSION

### I. *Statute of Limitations*

■ When the indictment was filed on March 23, 1994, Count 7 charged that Workinger "did corruptly obstruct and impede, and endeavor to obstruct and impede the due administration of the internal revenue Laws of the United States .... in violation of Title 26, United States Code, Section 7212(a)." More specifically, it charged that Workinger had submitted a false document on February 17, 1988, and two false documents on March 29, 1989, for those very purposes. Workinger contended that because the filing of the indictment took place more than three years after the incidents in question, the indictment was barred by the three-year statute of limitations. 26 U.S.C. § 6531.[1] The district court disagreed and applied, instead, the six-year statute of limitations. § 6531(1) and (6).

The statute of limitations does provide that, in general, criminal tax proceedings must be initiated within three years of the offense. It then provides eight exceptions for which the statute of limitations is six years. One of those exceptions establishes a six-year limitations period "for offenses involving the defrauding or attempting to defraud the United States ... in any manner." § 6531(1). Another exception establishes a six-year limitations period "for the offense described in Section 7212(a) (relating to intimidation of officers and employees of the United States)." § 6531(6). Section 7212(a) provides criminal penalties for the following:

> Corrupt or forcible interference.—Whoever corruptly or by force or threats of force ... endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this tile, or in any other way corruptly or by force or threats of force ... obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title....

Thus, § 7212(a) provides punishment for those who endeavor to obstruct or impede the administration of Title 26. It also pro-

---

1. Hereafter all references to statutory sections are to 26 U.S.C. unless otherwise stated.

vides punishment for those who endeavor to intimidate or impede an employee who is acting in his official capacity under that title.

Because he was charged with corruptly obstructing or impeding the due administration of the Internal Revenue laws, Workinger urges that the six-year provision does not apply to him. Workinger first argues that the district court erred by applying § 6531(1). He contends that § 6531(1) only applies to defendants expressly charged with defrauding the United States. Workinger avers that § 6531(1) cannot apply to one who has only impeded or obstructed the internal revenue laws because to impede or obstruct does not necessarily require the defendant to defraud the United States. He then asserts that § 6531(6) does not apply to him because the parenthetical language of § 6531(6) limits the scope of the six-year limitations exception to those § 7212(a) offenses involving the intimidation of officers and employees of the United States. He argues that, because he was indicted only for impeding the internal revenue laws, his § 7212(a) offense falls outside of the scope of the § 6531(6) exception.

The district court rejected both of Workinger's contentions. The court first interpreted the parenthetical language in § 6531(6) to be descriptive rather than limiting, and, therefore, applied a six-year statute of limitations to Workinger's claims. In the alternative, the court found that "the alleged violation of 26 U.S.C. § 7212(a) ... involves an attempt to defraud" and therefore applied the six-year limitations period set forth in § 6531(1). While, as we will explain, we disagree with the district court regarding the direct application of § 6531(1) to this case, we do agree that it must inform our determination that § 6531(6) does apply.

Section 6531(1), by its own terms, does not require that a defendant be expressly indicted for tax fraud. Indeed, a reading which so limited it would be inconsistent with the overall structure of the statute. The § 6531 exceptions start out with two very broad formulations. The first broad exception, as already mentioned, is any offense which "involves" defrauding the United States in any manner. See § 6531(1). The second covers the offense of "willfully attempting in any manner to evade or defeat any tax or the payment thereof...." § 6531(2). These two exceptions appear to cover most acts that a person could perform in an attempt to avoid paying taxes. As one commentator put it: "Although [§ 6531] states the general rule as being a 3-year period, there are numerous exceptions which render the 3-year period almost irrelevant." Patricia T. Morgan, *Tax Procedure and Tax Fraud in a Nutshell,* § 13.1.7 (1990). That observation surely applies to §§ 6531(1) and (2).

Nevertheless, § 6531 does go on and list other more specific exceptions. Among those is "offenses described in sections 7206(1) and 7207 (relating to false statements and fraudulent documents)." § 6531(5). Both § 7206(1) and § 7207 deal with particular kinds of fraud, and § 6531(5) might therefore be thought of as somewhat redundant to § 6531(1). Still, Congress undoubtedly wanted to avoid any argument that the particular offense mentioned in § 7206(1)—false declaration under penalty of perjury—is not fraud in itself. Similarly, Congress undoubtedly wanted to forestall an argument that some aspects of § 7207 were not truly fraudulent because the section refers to documents known to be "fraudulent" or "false as to any material matter...." In short, Congress wanted to be sure that mere technical distinctions would not make a difference in the statute of limitations. That underscores rather than undercuts the breadth of § 6531(1).

▮ Thus, in § 6531(1) Congress applied the six-year limitations period to offenses other than those mentioned in sections which were labeled "fraud," if those offenses did reflect fraudulent activity. In *United States v. Grainger,* 346 U.S. 235, 73 S.Ct. 1069, 97 L.Ed. 1575 (1953), the Supreme Court construed language of the Suspension Act, which was rather similar to the language of § 6531(1). That Act suspended "the running of any statute of limitations applicable to any offense ... involving fraud or attempted fraud against the United States or any agency thereof in any manner...." *Id.* at 242, 73 S.Ct. at 1073.

The Court said:

We believe that Congress sought by its phrase "involving fraud ... in any manner" to make the Suspension Act applicable to all offenses which are fairly identifiable as those in which fraud is an essential ingredient, by whatever words they be defined, and that Congress did not seek to limit its applicability to such of those identifiable offenses as also are labeled with a particular symbol.

*Id.* at 244, 73 S.Ct. at 1074. Here, as there, Congress has expressed a similar breadth of purpose.

 Workinger asserts, however, that the offenses under § 7212(a) do not necessarily include fraud as an "essential ingredient." With that we must agree. Still, it would be an unusual case where a person would corruptly obstruct or impede the administration of the tax laws, without having that activity include some element of fraud. The difficulty, of course, is that corruption and fraud are not the same, nor is the latter necessarily included in every instance of the former. As we have said, "An act is 'corrupt' within the meaning of § 7212(a) if it is performed with the intention to secure an unlawful benefit for oneself or for another." *United States v. Hanson*, 2 F.3d 942, 946 (9th Cir.1993); *see also United States v. Dykstra*, 991 F.2d 450, 453 (8th Cir.) *cert. denied*, 510 U.S. 880, 114 S.Ct. 222, 126 L.Ed.2d 177 (1993); *United States v. Reeves*, 752 F.2d 995, 998–99 (5th Cir.), *cert. denied*, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985). That may not involve fraud.

Nevertheless, there is often a clear relationship between fraud and corruption because both "are paradigm examples of activities done with an intent to gain an improper benefit or advantage." *United States v. Mitchell*, 985 F.2d 1275, 1278 (4th Cir.1993). In the case at hand, for example, Workinger obstructed and impeded by filing false documents. That was activity which was fraudulent by its very nature. Thus, although the district court was technically wrong, the breadth of § 6531(1) illuminates what Congress was about when it added the § 6531(6) exception to the three-year statute.

 In the context of the overall coverage of the § 6531 exceptions, it would be most peculiar if the parenthetical language in § 6531(6) were meant to restrict that section to the intimidation portion of § 7212(a). As we have already explained, § 6531(1) covers all offenses where fraud is an essential ingredient. Similarly, § 6531(2) covers all willful attempts to evade or defeat taxes. Perusal of the other portions of § 6531. reveals that § 6531(3) covers willfully aiding in the preparation of false or fraudulent returns, § 6531(4) covers the willful failure to pay tax or to file a return, § 6531(5) covers presentation of false statements and fraudulent documents, and § 6531(8) covers all conspiracies "to evade or defeat any tax or the payment thereof." Section 6531(7) then covers activities by corrupt government agents. All of these exceptions deal with the obtaining of improper benefits or advantages through the use of fraud or corruption.

If § 6531(6) only covered actual intimidation, Congress would have jumped beyond those concepts and solely focused upon crimes of violence and force. In doing so it would have left behind crimes of corruption. That is a very unlikely legislative leap. More likely is Congress's recognition that the argument now being made to us would be made. That is, that despite a defendant's submission of false documents in an attempt to impede the collection of taxes, he would assert that his acts were not really fraudulent but that they were merely corrupt. To forestall a defendant's evasion of prosecution by use of the shorter three-year statute, Congress expressly included § 7212(a) offenses within the list of the six-year exceptions. In short, the structure of § 6531 makes it apparent that the parenthetical language in § 6531(6) is descriptive, not limiting. Corruption was within the section's purview. The result is that the six-year statute of limitations applied to Count 7.

## II. *The Admission of the Transcript*

 Workinger next contends that the district court abused its discretion when it admitted the transcript of his recorded deposition into evidence. Workinger asserts that the transcript violated the best evidence rule, Fed.R.Evid. 1002; that the transcript was hearsay, Fed.R.Evid. 801 and 802; and that

the transcript was not sufficiently authenticated as required by Fed.R.Evid. 901(b)(1).

### A. The Best Evidence Rule

Workinger's claim that the admission of a transcript violated the best evidence rule is otiose. *See* Fed.R.Evid. 1002. The rule provides that: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." Here the government sought to prove the content of the tape made during Workinger's deposition. The tape, therefore, was the best evidence of its own content. *See United States v. Gonzales–Benitez,* 537 F.2d 1051, 1053 (9th Cir.), *cert. denied,* 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976). However, the tape was not available because it had been erased by its owner, Mr. Johnson, prior to the trial. That had been done in the ordinary course of his business and not at the behest of the government. Therefore, use of the tape itself was not required. *See* Fed.R.Evid. 1004(1); *see also United States v. Ross,* 33 F.3d 1507, 1513–14 (11th Cir.1994), *cert. denied,* ––– U.S. ––––, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995). The best evidence rule was not violated.

We, of course, are well aware of the fact that a tape recording cannot be said to be the best evidence of a conversation when a party seeks to call a participant in or observer of the conversation to testify to it. In that instance, the best evidence rule has no application at all. *See Gonzales–Benitez,* 537 F.2d at 1053–54. That is not this case.

It is true that, ultimately, the transcript of the tape was intended to reflect the content of the conversation that took place. But, more proximately, it was intended to reflect the content of the tape itself. When Johnson's secretary was given the tape and told to transcribe it, what she did was prepare a document which purported to indicate what she heard on the tape. But if somebody wanted to know the content of that tape, it itself *was* the best evidence of that. A different rule would lead to transcripts being submitted with the admonition "Trust me, the transcript *does* reflect what was taped." Indeed, it would be like having the secretary come to court to testify, "I have listened to the tape, and here is what it says." That cannot be right; it is precisely what the best evidence rule was designed to avoid.

Thus, again, the tape was the best evidence of what was recorded upon it, but the best evidence rule was not violated in this case.

### B. Hearsay

Workinger next contends that the transcripts were inadmissible hearsay. Fed. R.Evid. 801(c). That rule defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." However, an admission by a party-opponent is not hearsay. Fed.R.Evid. 801(d)(2)(A). Workinger's statements in the transcript were admissions of a party-opponent; they were not hearsay.

### C. Authentication

Workinger additionally contends that because the transcripts were not adequately authenticated, the district court abused its discretion when it admitted them into evidence. *See* Fed.R.Evid. 901(a). That Rule states that for authentication there must be "evidence sufficient to support a finding that the matter in question is what its proponent claims." A document can be authenticated by the testimony of a witness with knowledge. *United States v. Childs,* 5 F.3d 1328, 1336 (9th Cir.1993), *cert. denied,* ––– U.S. ––––, 114 S.Ct. 1385, 128 L.Ed.2d 60 (1994). The government need only make a prima facie showing of authenticity "so that a reasonable juror could find in favor of authenticity or identification." *United States v. Chu Kong Yin,* 935 F.2d 990, 996 (9th Cir.1991) (citation omitted). Once the prima facie case for authenticity is met, the probative value of the evidence is a matter for the jury. *Id.; United States v. Blackwood,* 878 F.2d 1200, 1202 (9th Cir.1989) (per curiam).

To authenticate the tapes, the government elicited testimony from the person who transcribed the tape. She testified that she lis-

tened to them "over and over" to make sure that her transcription was accurate. The government also elicited testimony from Mr. Johnson, the attorney who conducted the taped interview. Mr. Johnson testified that he had examined the transcript shortly after it was made and had compared it to the actual tape recordings and then filed an affidavit with the state court attesting to its accuracy. He testified that, to the best of his recollection, the transcript accurately represented the testimony during the deposition. Although he testified at trial that he could not specifically recollect listening to the tapes, he also testified that he would not have signed the affidavit had he not done so.

The district court did not abuse its discretion when it admitted the transcript because the testimony certainly met the minimum requirements for authentication. Workinger's objections, therefore, were simply a matter for the jury to consider when it determined the weight it would afford to the transcript.

### III. *Testimony of Agent Brock*

■ Workinger next contends that the prosecution offered false evidence when it elicited testimony from Agent Brock that characterized two monetary amounts as income. First, she testified that $7,855.55 payed to the defendant from Ira Lawrence was income—not merely a loan as Workinger claims. Second, she testified that the entire $8,625 in proceeds Workinger received from the sale of equipment to Lawrence was income—not an amount reduced by his basis in the property. Workinger disagrees with her analysis, but his differing opinion of the results of his various manipulations does not convert the agent's contrary characterization into perjury. Brock's testimony did have a basis in the facts and in the law and Workinger's disagreement with Brock's analysis did not transform her testimony into a falsehood. *See Campbell v. Gregory,* 867 F.2d 1146, 1148 (8th Cir.1989) (testimony of expert is not perjury merely because it differed from opinions of other experts). In short, Workinger has not made a prima facie case of government misconduct. *See United States v. Paris,* 827 F.2d 395, 401 n. 3 (9th

Cir.1987) (burden is on defendant to make prima facie case showing prosecutorial misconduct).

### CONCLUSION

There can be little doubt that Workinger set out to deprive the government of taxes that he properly owed. Despite his almost daedalian schemes to avoid paying his share of the cost of maintaining our society, he was found out. He now seeks to escape from part of his criminal liability by asserting that because he was accused of corruption rather than fraud, as such, one of the counts against him was barred by the statute of limitations. He is wrong because when it enacted § 6531(6) Congress assured that the corrupt as well as the fraudulent would be subject to a six-year statute of limitations.

AFFIRMED.

KOZINSKI, Circuit Judge, concurring in part and concurring in the judgment:

I agree with the majority's result, but cannot join all of its opinion. Specifically, I don't agree with its reasons why a six-year and not a three-year statute of limitations applies to Count 7. Nor can I join its rationale for concluding that the best evidence rule didn't preclude the government from introducing a transcript instead of a tape of defendant's deposition.

### I

Count 7 charged Workinger with violating 26 U.S.C. § 7212(a). That statute makes it a felony to:

> corruptly or by force or threats of force ... endeavor[ ] to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force ... obstruct[ ] or impede[ ], or endeavor[ ] to obstruct or impede, the due administration of this title.

Workinger violated section 7212(a), according to the indictment (and the jury's verdict), by submitting false documents to the IRS. Count 7 therefore did not charge that he had intimidated United States officials, but only that he "did corruptly obstruct and impede,

and endeavor to obstruct and impede" the administration of the tax laws. Indictment, ER at 4.

The indictment was filed much more than three years after he submitted the last of the false documents. Workinger thus points to 26 U.S.C. § 6531, which provides a three-year statute of limitations for criminal tax offenses, except those listed in its eight subsections. Subsection six provides a six-year statute of limitations "for the offense described in section 7212(a) (relating to intimidation of officers and employees of the United States)."[1] In Workinger's view, the subsection's parenthetical reference to intimidation of United States officials restricts the subsection's coverage, and thus applies only to section 7212(a) offenses involving intimidation, not those involving otherwise obstructing or impeding. Because he was charged only with obstructing and impeding, not intimidating, Workinger argues, the indictment was barred by the statute of limitations.

The majority rejects this argument on the ground that the other subsections of section 6531 don't suggest Congress sought to distinguish, for statute of limitations purposes, between tax offenses involving force or violence and other tax offenses; there's therefore no reason to think Congress tried to draw such a distinction in section 6531(6). *See* maj. op. at 1414. True enough, but this doesn't tell us much about whether section 6531(6) refers to section 7212(a) in its entirety, or only to that portion criminalizing "intimidation" of United States officials. The reason is that none of the other subsections of section 6531 refers to substantive offenses like section 7212(a), which, by its terms, criminalizes the use or threat of force, in addition to other conduct. Because section 6531(6) specifically mentions "intimidation" but omits "obstructing" or "impeding," Workinger's argument is not defeated by the majority's analysis.

I would begin by examining the language of section 6531(6), *see N.Y. Conference of Blue Cross v. Travelers Ins.,* — U.S. —, —, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995), something the majority never does. Consistent with ordinary usage, section 6531(6)'s parenthetical is more naturally understood as descriptive rather than restrictive. *See* Norman J. Singer, 2A Sutherland Statutory Construction § 45.13, at 78 (5th ed. 1992) ("[L]egislators can be presumed to rely on conventional language usage."). Thus, section 6531(6) reads most easily if "the offense described in section 7212(a)" is taken to refer to section 7212(a) in its entirety, and the parenthetical language is understood as further identifying, by way of a general description of its content, the section intended. This does not violate the canon of statutory construction that says courts should strive not to render language in a statute superfluous. Parenthetical language is commonly used for descriptive purposes and, to the extent Congress so used it in section 6531(6), it remains fully functional under a descriptive interpretation. If Congress intended to establish a six-year statute of limitations for "intimidating" and a three-year statute for otherwise obstructing or impeding, it chose a particularly awkward way to achieve this. It would have been much more straightforward to outlaw intimidating United States officials in one subsection, to outlaw any other form of obstructing or impeding them in another, and to refer only to the first in section 6531(6).

Other courts have interpreted identical parenthetical language as descriptive. In *United States v. Herring,* 602 F.2d 1220 (5th Cir.1979), for example, defendant was charged with "racketeering activity" as defined by 18 U.S.C. § 1961. Section 1961's definition incorporated by reference other federal offenses, identifying them by their United States Code section and a brief parenthetical description. *See Herring,* 602 F.2d at 1223 n. 3. One of the statutes so

---

1. The district court found Count 7 timely based not only on section 6531(6), but also on section 6531(1). The latter provides a six-year statute of limitations "for offenses involving the defrauding or attempting to defraud the United States or any agency thereof." 26 U.S.C. § 6531(1). The government doesn't defend this reasoning on appeal and, in fact, with commendable candor, acknowledges the authority that shows it to be error. Br. of Appellee at 15 n. 5 (citing *United States v. Grainger,* 346 U.S. 235, 244, 73 S.Ct. 1069, 1074, 97 L.Ed. 1575 (1953)). The majority's discussion of the issue, maj. op. at 1413–14, is therefore superfluous.

incorporated was 18 U.S.C. § 2314, which made it a crime to transport securities in interstate commerce, knowing them to have been "stolen, converted or taken by fraud." *Herring*, 602 F.2d at 1222 n. 2. Section 1961, however, described section 2314 as only "(relating to interstate transportation of *stolen* property)." *Id.* at 1223 & n. 3 (quoting 18 U.S.C. § 1961) (emphasis added). Defendant moved to dismiss the section 1961 charge, claiming that, while the securities in *Herring* might have been "converted" or "taken by fraud," it was clear they had not been "stolen"; he therefore hadn't violated the part of section 2314 that had been incorporated into section 1961. *See id.* at 1223. The Fifth Circuit rejected this argument, explaining that "the parenthetical [language] ... was intended merely to aid the identification of section 2314 rather than to limit the proscriptions of that section." *Id.; accord United States v. Garner*, 837 F.2d 1404, 1418–19 (7th Cir.1987) (section 1961's reference to "title 18, United States Code: Section 201 (relating to bribery)" reached any conduct amounting to a section 201 violation, not only conduct within "the common definition of bribery"); *Fidelity & Deposit v. Stromberg Sheet Metal*, 532 A.2d 676, 678–79 (D.C.App.1987) (statutory reference to "title 40 ... sections 270a–270e (known as the Miller Act, relating to performance bonds)" meant the entire Miller Act, not "only that portion dealing with performance bonds").

Workinger doesn't point to any cases that have interpreted similar parenthetical language as restrictive. He cites 26 U.S.C. § 1(a)(1), which refers to "every married individual (as defined in section 7703)," and 26 U.S.C. § 9722, which states: "If a principal purpose of any transaction is to evade or avoid liability under this chapter, this chapter shall be applied (and such liability shall be imposed) without regard to such transaction." These sections don't help Workinger. Unlike the language of section 7212(a), language of the section 1(a)(1) is more naturally understood as restrictive because it uses the restrictive phrase "as defined." And it's not clear what comfort Workinger gets from sec-

tion 9722's parenthetical language, which is clearly not restrictive but descriptive.

Nor is Workinger's explanation of why Congress would have provided a six-year statute of limitations for "intimidating" but a three-year statute for otherwise "obstructing or impeding" persuasive. He claims that intimidation offenses are somehow less "dangerous" than other section 7212(a) violations, Appellant's Reply Br. at 4, but this doesn't take into account the language of section 7212(a). The statute makes it illegal not only to "intimidate or impede" United States officials, but to "in any other way corruptly *or by force or threats of force* ... obstruct[ ] or impede[ ], or endeavor[ ] to obstruct or impede, the due administration of this title." 18 U.S.C. § 7212(a). In other words, section 7212(a), by its terms, anticipates "obstructing" or "impeding" offenses that involve the use of force or threats, and can therefore be quite "dangerous." Suppose, for example, that Workinger had broken into the home of the IRS agent who was investigating him and slit the agent's throat while he slept. Workinger wouldn't have intimidated the agent, but he would surely have endeavored to obstruct or impede the administration of the tax laws in a particularly "dangerous" manner.

The legislative history, though not conclusive, favors the view that section 6531(6) refers to section 7212(a) in its entirety.[2] According to the House Report, section 7212(a) was intended to reach any type of "interference" with the administration of the tax laws, and Congress viewed all such interference as equally serious:

> A [current] provision of the ... Code makes it an offense punishable by a $5,000 fine or 3 years' imprisonment or both to forcibly assault, resist, oppose, etc., any officer or employee acting under the internal revenue laws. A similar, but amplified, provision of this bill covers all cases where the officer is intimidated or injured; that is, where corruptly, by force or threat of force, directly or by communication, an attempt is made to impede the administra-

---

**2.** Because I do not believe the section is clear, it is appropriate to consult legislative history for a general understanding of what the drafters had in mind.

tion of the internal-revenue laws. The penalty in the case of all such attempts to interfere with the administration of the internal-revenue laws is to be a fine of not more than $10,000 or imprisonment for not more than 5 years or both.

H.R.Rep. No. 1337, 83d Cong., 2d Sess. 107 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4025, 4135–36. The House Report further describes section 6531 as providing a six-year limitations period "for intimidating United States officers." *Id.* at 4134. Given the Report's evident view that section 7212(a) sets forth a single offense, its reference to "intimidating United States officers" is, in context, a reference to the entire prohibition established by section 7212(a), denoted by the first act (or, more precisely, result) it proscribes.

Workinger also points to *Waters v. United States,* 328 F.2d 739 (10th Cir.1964), where the Tenth Circuit reasoned that "[s]ince the six-year limitation [under section 6531] is an exception to the [three-year] general rule, it must be strictly construed to apply to those offenses specifically enumerated." *Id.* at 743. Workinger takes this language out of context. The Tenth Circuit was there referring to offenses listed in sections of the tax code that were not enumerated in section 6531. Section 7212(a), by contrast, is listed by number and therefore is "specifically enumerated" as the Tenth Circuit used those words. Workinger also points to *Waters'* statement that section 6531 "is to be liberally interpreted in favor of the accused." *Id.* at 742. The Supreme Court has since explained, however, that the so-called "rule of lenity" applies only where the language of a criminal statute is "grievously ambiguous." *Staples v. United States,* 511 U.S. 600, —— n. 17, 114 S.Ct. 1793, 1804 n. 17, 128 L.Ed.2d 608 (1994) (brackets omitted); *Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991). That test isn't met here. Although Workinger's interpretation can't be rejected out of hand, it's not as persuasive as the alternative.

I see no reason to apply the rule of lenity in any event. The Supreme Court has articulated two rationales for the rule, neither of which is implicated here. The first is that

defendants are entitled to notice of what's illegal so they can conform their conduct. *See United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971). But it is unlikely in the extreme that a defendant would elect to commit a crime because he believed the statute of limitations for the offense was only three years instead of six; there is no plausible reliance interest at stake here. The second rationale is that only legislatures, not courts, should make conduct criminal; the rule of lenity prevents a court from resolving an ambiguity in a criminal statute so as to expand the scope of a criminal statute beyond what the legislature clearly intended. *See id.* But there's no concern here that a court will render criminal what the legislature meant to remain legal. Workinger's conduct clearly was criminal under section 7212(a); the only doubt is whether the government waited too long to prosecute. There's no reason to apply the rule of lenity on that point.

## II

Workinger's best evidence rule argument commands considerably less force than his interpretation of section 6531(6). He claims the government should not have been allowed to introduce a transcript of his deposition because the deposition had also been recorded on tape. The majority properly rejects this argument, but for the wrong reason. According to the majority, the transcripts were admissible because the deposition tapes were destroyed by their owner before trial "in the ordinary course of his business and not at the behest of the government." Maj. op. at 1415.

I cannot join this analysis because it presupposes that the best evidence rule applies here. It does not. The best evidence rule calls for the introduction of "the original writing, recording, or photograph" only where the proponent seeks "[t]o prove the content of a writing, recording, or photograph." Fed.R.Evid. 1002. Here, the government did not seek, by introducing the transcript, to prove the content of the tapes but to prove what was said at the deposition itself; Workinger admits as much. *See* Br. for Appellant at 17 ("The prosecution in this

case sought to introduce the transcript *as evidence of admissions by Dr. Workinger.*") (emphasis added) (citing ER 137 (the government offered testimony "to authenticate the transcript as substantive evidence of what occurred")).[3] It is true that the reporter prepared the transcript by listening to the tapes. The transcript, nevertheless, purports to reflect what was said at the deposition, not what was on the tapes.[4] The best evidence rule has no application.

The majority attributes some independent significance to the tape transcript by arguing that "[a] different rule would lead to transcripts being submitted with the admonition 'Trust me, the transcript *does* reflect what was taped.' ... [This] is precisely what the best evidence rule was designed to avoid." Maj. op. at 1415. But this hopelessly confuses the policies of the best evidence rule with those of the hearsay rule. The transcript here was admissible not because it accurately reflected the tape, but because Donald Johnson, the attorney for the defendant's ex-wife, testified that it accurately reflected *the deposition.* ER at 90–92. Without this testimony from someone who was present, I'm not at all sure the transcript would have been admissible since, as the majority notes, the transcriber was not present when the testimony was given and thus could not authenticate the transcript as an accurate reflection of what was said at the deposition. *See* maj. op. at 1415.

And here is what I find curious about the majority opinion. In the name of ensuring the integrity of transcripts, my colleagues permit the introduction of a transcript where the intervening tape has been destroyed. Since we have no evidence of what the tape said other than the transcript itself, we really do have a situation where the secretary who transcribed the tape can tell us only "I have listened to the tape, and here is what it says." Maj. op. at 1415.[5] At the same time, the majority seems to say that, *were* the tape available, the best evidence rule would re-

quire its introduction in lieu of the transcript. One can only imagine the upheaval this will cause in the trial courts of the Ninth Circuit. Since virtually all transcripts are prepared from an intervening medium (an audio tape, stenograph paper, a computer tape), the clear implication of today's opinion is that the best evidence rule precludes introduction of the transcript if the intervening medium is available. All told, I think this is a strange result and entirely unnecessary.

I join the remaining portions of the majority opinion.

---

3. The majority's statement to the contrary, maj. op. at 1414–15, isn't accurate.

4. In this case the distinction doesn't matter much, but it well could. In a case, for example, where the defendant was charged with fraudu-

lently altering a tape, the best evidence rule might well bar the admission of the transcript to prove what was on the tape.

5. Fortunately, as noted, what the tape says really doesn't matter. *See* note 4, *supra.*