Argued and submitted on October 31, 2007, on appeal, reversed and remanded;
on cross-appeal, affirmed April 23, 2008

STATE OF OREGON,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

CHRISTOPHER SCOTT NELSEN,
aka Christopher Scott Nelson,
*Defendant-Respondent*
*Cross-Appellant.*

Umatilla County Circuit Court
CF040957; A129091

183 P3d 219

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for appellant-cross-respondent. On the opening brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Julie A. Smith, Assistant Attorney General. With her on cross-respondent's brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Joshua B. Crowther, Deputy Public Defender, argued the cause for respondent-cross-appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

The state appeals, and defendant cross-appeals, from a trial court order excluding testimony regarding the contents of a lost video surveillance recording, but allowing the use of still photographs made from that recording. The state argues that the trial court erred in preventing it from introducing testimony as secondary evidence of the contents of the lost video recording. Defendant argues that not only was the testimony regarding the lost video properly excluded, but that the court should also have excluded the still photographs that were taken of the video. For reasons that follow, we reverse the exclusion of the testimony regarding the contents of the video and affirm the trial court's decision to allow the use of the photographs.

Defendant was indicted on charges of first-degree criminal mischief, ORS 164.365, second-degree burglary, ORS 164.215, and third-degree theft, ORS 164.043. Those charges arose from an incident in September 2004 in which someone broke into the coin machines at the Speed Wash Laundry in Pendleton, stealing money and damaging the machines.

The incident was recorded on a digital surveillance system, and Phyllis Rees, who is the owner of the laundromat, her son-in-law, and Pendleton Police Officer Byram watched a portion of the video the day of the incident. Byram requested a copy of the video at that time, but Rees was unable to make a copy because she had only recently installed the system and did not yet have the required equipment to make duplicates. Rees told Byram that she would have her son-in-law figure out how to make a copy, and would then send it to Byram.

A month later Byram received still photographs that Rees and her son-in-law had taken of several frames of the video while it played on the television screen, but he never received a copy of the video itself. At the time of trial, the video footage was no longer available because, apparently, the video system had automatically recorded over the footage in question.

Lacking the surveillance video, the state sought to introduce the still photographs and the testimony of Rees and Byram, who would have described what they had seen on the video. Defendant moved *in limine* to exclude both the testimony and the photographs, arguing that, as pertinent here, OEC 1002 and the Sixth Amendment to the United States Constitution prevented the introduction of any evidence connected to the surveillance video. At the hearing on the *in limine* motion, Rees and Byram described their putative trial testimony.

Byram stated that he had viewed approximately three to five minutes of the surveillance video, and that he had seen four people "unlawfully entering into the laundry machines and the change machine of the Speed Wash Laundry and damaging the property and taking the money." He did state, however, that not all four of the people actually broke the machines and took money, as "[s]ome were on lookout." He was also able to recognize three of the four people involved by watching the video. Initially, upon viewing the video, Byram had not identified defendant. However, later, when he received the photographs that Rees had taken from a different portion of the video, Byram was able to identify defendant as the fourth person. Byram also stated that defendant was not one of the people who had actively pried into the machines.

Rees stated that she had watched the entire video "probably about three times." Although she herself could not identify any of the people in the video, she agreed with Byram that the video showed that four people were involved in the incident and that Byram had immediately identified three of them. She said that, in the video, "you could just see the action of people moving around, looking, prying, turning, then the crowbar came out, and then that's when the real damage happened." She stated that "[t]here were people on the outside who were doing—watching for—you know, the lookout kind of person," and that there was only one person who had used the crowbar. Finally, when asked if the video had been recorded over, Rees replied, "I don't know."

After listening to the putative testimony, the trial court determined that OEC 1002, the best evidence rule, applied and concluded that, under that rule,

"all evidence of the surveillance recording from Speedwash Laundry, except for photographs and testimony regarding the photographs of the surveillance recording, be excluded[.]"

The state then filed a motion for reconsideration. Before the trial court ruled on that motion, the state filed this interlocutory appeal. Thereafter, the trial court issued a memorandum opinion on reconsideration. In that opinion, the court disavowed its earlier reliance on the best evidence rule, but adhered to its original ruling—*viz.*, excluding the testimony, but allowing the photographs—as consonant with the dictates of due process.

■ As a preliminary matter, we observe that the trial court's disposition of the state's motion for reconsideration[1] was nugatory. That is so, because, upon the filing of the state's notice of appeal, the trial court lost jurisdiction to reconsider its ruling. Thus, we review only the trial court's original order. Nevertheless, in determining the correctness of the trial court's ruling, we are not limited to the trial court's rationale and may affirm the decision if it was "right for the wrong reason"—but only if the evidentiary record was sufficiently developed to support that alternative ground. *See, e.g., Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001) (elucidating "right for the wrong reason" principle).

On appeal, the state first argues that the best evidence rule does not apply to bar the introduction of the testimony. OEC 1002 provides:

"To prove the contents of a writing, recording or photograph, the original writing, recording or photograph is required, *except as otherwise provided in ORS 40.550 [OEC 1001] to 40.585 [OEC 1008] or other law.*"

(Emphasis added.)

Because the video is a "recording," the state acknowledges that it falls within the scope of OEC 1002.

---

[1] *Cf. Carter v. U. S. National Bank*, 304 Or 538, 546, 747 P2d 980 (1987) (Peterson, C. J., concurring) ("The so-called 'motion for reconsideration' appears neither in the Oregon Rules of Civil Procedure nor in any other Oregon statute. Lawyers filing motions to reconsider after entry of judgment might better denominate such a motion as a 'motion asking for trouble[.]' ").

However, the state argues that the proposed testimony falls squarely within the exception set forth in OEC 1004. The pertinent portion of OEC 1004 provides:

"The original is not required, and other evidence of the contents of a writing, recording or photograph is admissible when:

"(1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith[.]"

The state contends that, because the videotape was lost and the state did not lose the videotape—much less in "bad faith"—the state could present other evidence to prove the contents of the surveillance video. Consequently, the state argues, the trial court erred as a matter of law in determining that the exception described in OEC 1004 did not apply.

Defendant argues that the trial court properly, as a matter of "discretion," excluded the testimony of the contents of the surveillance video. First, defendant argues that the state failed to demonstrate that the video was, in fact, "lost" or "ha[d] been destroyed." OEC 1004. Further, and alternatively, defendant contends that, even if that prerequisite was satisfied, the state's failure to obtain and preserve the video was in bad faith.

The parties' arguments regarding the applicability of the best evidence rule proceed from different assumptions about our standard of review. The state argues that the trial court was incorrect as a matter of law; conversely, defendant couches his defense of the court's ruling in terms of an exercise of "discretion." To be sure, the Supreme Court has explained that, "with respect to many evidentiary decisions, trial courts possess broad discretion." *State v. Rogers*, 330 Or 282, 310, 4 P3d 1261 (2000). Nevertheless, the scope of that "discretion" is, necessarily, defined and circumscribed by the nature of the ruling:

"[I]n the context of evidentiary rulings, 'discretion,' as this court has used that term, refers to the authority of a trial court to choose among several legally correct outcomes. * * * It follows that we must first review evidentiary rulings without deference to determine whether proper principles

of law were applied correctly. Next, and also without deference, we must determine whether application of those principles leads to only one correct outcome. If there is only one legally correct outcome, and the trial court arrived at that outcome, it did not err; conversely, if the trial court arrived at a different outcome, then it did err. Only if we determine that application of the correct legal principles leads to more than one correct outcome do we continue to review whether the trial court abused its discretion in choosing an outcome. If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the trial court did not abuse its discretion. Accordingly, appellate review of rulings on the admissibility of evidence may involve the application of several standards of review, depending on the particular ruling and assignment of error at issue."

*Id.* at 312 (footnote omitted). Consistently with that approach, we must first determine whether, in the circumstances presented here, the correct application of the "proper legal principles" can yield more than one "legally correct outcome." Only if it can, permitting a choice among legally permissible alternatives, is "abuse of discretion" review implicated.

We reject, at the outset, defendant's contention—ostensibly advanced as an alternative ground for affirmance—that OEC 1004 is inapposite because the state failed to establish that the video was, in fact, "lost." Defendant never raised such a contention before the trial court—indeed, and to the contrary, in his written memorandum in support of his motion to suppress, defendant asserted that the videotape "has been destroyed and there are no copies of the videotape" and the videotape "has been destroyed due to the state's lack of diligence in preserving it." Rather, defendant's argument for exclusion under the best evidence rule was predicated solely on the "bad faith" proviso of OEC 1004(1).

Given those circumstances, defendant's present contention is not properly cognizable as an alternative basis for affirmance. If defendant had disputed whether the videotape had, in fact, been lost or destroyed, the state would have been alerted to the need to further develop the record as to that matter. *See Outdoor Media Dimensions Inc.*, 331 Or at 660

("right for the wrong reason" principle is inapplicable "if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue" (emphasis in original)). Further, the question of whether the videotape was actually lost or destroyed is a matter of fact, which we, as an appellate court, cannot determine in the first instance.

■      We proceed, then, to the issue that was central to the availability of the OEC 1004(1) exception to the best evidence rule, as framed by the parties and as resolved by the trial court: Did "the proponent" of the evidence—the state—lose or destroy the videotape in bad faith? We conclude, contrary to the trial court's understanding, that, because the original videotape was recorded over while in the possession of a third party (the laundromat owner, Rees), who did not act at the state's direction or was not otherwise an agent of the state, *the state* did not lose or destroy the videotape.

As a matter of straightforward statutory construction, *see PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), the text and syntax of OEC 1004(1) precludes the admission of testimony describing the contents of a "lost" or "destroyed" original recording only if the party offering that testimony "lost" or "destroyed" the original. "Lost" is the past tense of "lose"—as plausibly pertinent here, "to fail to keep at hand or accessible : miss from one's possession : miss from its customary or supposed place ‹*lost* his gloves› ‹little Bopeep has *lost* her sheep› [.]" *Webster's Third New Int'l Dictionary* 1338 (unabridged ed 2002). "Destroyed" is the past tense of "destroy"—*i.e.*, to "ruin the structure, organic existence, or condition of[.]" *Id.* at 615.

Thus, putting aside the provocative question of how something can be "lost" in "bad faith," "lost" connotes misplacing an item that was in one's possession. "Destroyed" connotes active spoliation. Here, the state did neither. It may be that, as defendant contends, the state could have, and should have, acted more diligently to obtain and preserve the videotape after Byram viewed it. But the state's failure to obtain evidence in a third-party's possession that the third party later, and without notice to the state, loses or destroys,

does not mean that the state has lost or destroyed the evidence.[2]

Our conclusion in that regard accords with the decisions of federal courts construing and applying Federal Rule of Evidence (FRE) 1004, the identical federal analog to OEC 1004(1). *See, e.g., State v. Cornell*, 109 Or App 396, 400, 820 P2d 11 (1991), *aff'd*, 314 Or 673, 842 P2d 394 (1992) (because the Oregon rule of evidence is derived from the federal rule, "we may look to federal cases applying the federal rule as interpretive guides").

*United States v. Workinger*, 90 F3d 1409 (9th Cir 1996), is exemplary. In *Workinger*, the federal government sought to introduce the transcript of an interview the defendant had had with his former wife's attorney. That deposition had been recorded, but, by the time of trial, the tapes had been erased, and the only extant evidence of its substance was the transcript that the attorney's secretary had prepared by listening to the tapes. Although the court recognized that the tape "was the best evidence of its own content," it concluded that "because it had been erased by its owner" and "not at the behest of the government," the proponent of the evidence had not destroyed the tape. *Id.* at 1415. Thus, the transcript was admissible under FRE 1004 to prove the substance of the taped deposition. *Id.* at 1416. Similarly, in this case, the state did not destroy the recording, and there is no suggestion that Rees deleted the video at the state's behest. Consequently, OEC 1004(1) applies, and the best evidence rule does not preclude Byram's and Rees's testimony describing the contents of the surveillance videotape.

■    Defendant contends, nevertheless, that the trial court's exclusion of that testimony should be affirmed on an alternative basis. Specifically, defendant asserts that, even if the trial court's reliance on the best evidence rule to exclude the testimony was improper, the Due Process Clause of the Fourteenth Amendment presents an alternative and independent bar to the testimony on the ground that the state

---

[2] Given the circumstances here, we need not consider the applicability of OEC 1004(1) when the state knows that the third party intends to destroy the original but takes no steps to preserve the evidence or to prevent its destruction.

failed to preserve potentially exculpatory material.[3] For the reasons that follow, we disagree.

■ The United States Supreme Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence" for criminal defendants. *United States v. Valenzuela-Bernal*, 458 US 858, 867, 102 S Ct 3440, 73 L Ed 2d 1193 (1982). To protect that right to evidence, the Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963). As a result, to avoid a so-called "*Brady* violation," the state must provide a defendant all evidence the state has that is material to the defendant's guilt or to the resultant punishment. *Id.*

■ The Supreme Court has established a different test, however, when the state has lost or destroyed the evidence. *Arizona v. Youngblood*, 488 US 51, 57, 109 S Ct 333, 102 L Ed 2d 281 (1988). In such a case, for suppression of the lost or destroyed evidence to be constitutionally required, the defendant must show either that the state lost or destroyed the evidence in "bad faith," *id.* at 58, or that the evidence possessed "an exculpatory value that was apparent before the evidence was destroyed" and "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 US 479, 489, 104 S Ct 2528, 81 L Ed 2d 413 (1984).

Defendant asserts that the lost videotape footage "would provide favorable evidence in [his] case for several reasons" and that the "footage was unique and [he] would not have any other reasonable alternatives with which he could obtain evidence to challenge the prosecution's case." As a

---

[3] In contrast to defendant's belated contention that the state had failed to prove that the videotape was, in fact, "lost" or "destroyed," *see* 219 Or App at 449-50, defendant did fully raise and litigate the alternative, constitutional basis for exclusion before the trial court. Indeed, as noted, the trial court ultimately based its ruling on "reconsideration" on that alternative ground. *See* 219 Or App at 447. Accordingly, defendant's constitutionally based alternative ground for affirmance fully satisfies the conditions prescribed in *Outdoor Media Dimensions Inc.*, 331 Or at 660.

result, defendant urges that the concerns of due process mandate the suppression of the testimony regarding the lost video.

The state responds that we need not get to the question of whether the lost evidence would have been favorable and unique, because "a due process violation occurs only when the *state* loses, destroys, or fails to disclose the existence of exculpatory evidence, not when the evidence is lost, destroyed, or otherwise suppressed by a private citizen." (Emphasis in original.) The state is correct.

█ Generally, concerns of due process apply only to actions by the state, not by private citizens. *See, e.g.,* *Colorado v. Connelly*, 479 US 157, 107 S Ct 515, 93 L Ed 2d 473 (1986). In the context of evidence in a criminal trial, the Supreme Court has explained:

> "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; *that evidence must have been suppressed by the State*, either willfully or inadvertently; and prejudice must have ensued."

*Strickler v. Greene*, 527 US 263, 281-82, 119 S Ct 1936, 144 L Ed 2d 286 (1999) (emphasis added). In *Strickler*, the Court determined that the second component—state action—was satisfied, because the state had actually possessed the evidence in question but had failed to disclose it to the defendant. *Id*.

Applying that logic, the Second Circuit has explained that, before a defendant may prevail on a due process claim for loss of exculpatory evidence, "the record must first show that evidence has been lost and that *this loss is 'chargeable to the State.'*" *United States v. Rahman*, 189 F3d 88, 139 (2d Cir 1999), *cert den*, 528 US 1094 (2000) (quoting *Colon v. Kuhlman*, 865 F2d 29, 30 (2d Cir 1988) (emphasis added)). In *Rahman*, the evidence in question was a series of audiotapes that an FBI informant had made on his own of some of his conversations with the defendants and others. The informant later erased some of those tapes and, consequently, the prosecution could not make them available to the defendants. The Second Circuit rejected the defendants'

claim that the loss or destruction of the audiotapes violated their due process rights. The court concluded:

> "Although [the informant] did record over some of his personal tapes, these erasures are not chargeable to the Government. The tapes in question were not recorded at the Government's request or instruction. There is no indication that Government agents made any request or instruction to destroy any of the tapes."

*Rahman*, 189 F3d at 140.

Similarly, in this case, the loss of the video surveillance tape is not "chargeable to the state." As with the tapes in *Rahman*, the footage here was created by a third party, without state encouragement or involvement. And, like the tapes in *Rahman*, the footage here was lost because of the acts of the third party, not the state. Accordingly, as in *Rahman*, the state action that is the *sine qua non* of a *Brady* violation—and, specifically, one pertaining to the loss or destruction of putative evidence, *see, e.g., Youngblood*—was absent here.[4] Consequently, the trial court erred in excluding Byram's and Rees's testimony describing the content of the videotape.

■ We turn, then, to defendant's cross-appeal. Defendant argues that the trial court improperly admitted the photographs that Rees and her son-in-law took of several frames of the now-lost surveillance video. They took the still photographs using a camera pointed at the screen of the television to capture images of the paused video. Those photographs include images of a person whom Byram identifies as defendant at the laundry, as well as images of a different person using a crow bar to pry open the change machine. Defendant assigns error to the trial court's denial of his *in limine* motion to exclude the photographic evidence, arguing that the Oregon Evidence Code and the Due Process Clause of the

---

[4] *State v. Zinsli*, 156 Or App 245, 966 P2d 1200, *rev den*, 328 Or 194 (1998), which defendant invokes, is materially distinguishable. There, the lost evidence was a videotape of a traffic stop, including the defendant's performance of field sobriety tests, which was recorded when the arresting officer "turned on his in-car video camera." *Id.* at 247. It was uncontroverted there that "[d]uring the time between defendant's arrest and the revocation of his diversion [for DUII], the state lost the videotape." *Id.* at 248. Thus, in *Zinsli*, the requisite state action for purposes of the federal due process analysis, *see id.* at 252-54, was patent.

Fourteenth Amendment required the suppression of such evidence.

Defendant's argument under the Oregon Evidence Code, as we understand it, is as follows: *First*, under the "best evidence rule," OEC 1002, a party seeking to prove the contents of, *inter alia*, a recording must introduce the original of that recording unless the proponent of the evidence demonstrates the availability of an exception to the best evidence rule. *Second*, OEC 1003 allows the proponent of the evidence to introduce a "duplicate" of the recording in lieu of the original recording, unless "[i]n the circumstances it would be unfair to admit the duplicate in lieu of the original." OEC 1003(2).[5] *Third*, under the operative definition of "duplicate" in OEC 1001(1), the still photographs are "duplicates" of the original videotape.[6] *Fourth*, it would be "unfair" to permit the state to present the photographs without the videotape because the photographs are, in isolation and without the context of the entire tape, misleading. Specifically, defendant asserts that the photographs "do not accurately capture the entire events" and "[a]dmitting still images in lieu of the entire footage would place undue emphasis on particular images; specifically, those images could be used to portray defendant as a burglar inside of the Laundromat as opposed

---

[5] OEC 1003 provides:

"A duplicate is admissible to the same extent as an original unless:

"(1) A genuine question is raised as to the authenticity of the original; or

"(2) In the circumstances it would be unfair to admit the duplicate in lieu of the original."

[6] OEC 1001(1) provides:

" 'Duplicate' means a counterpart produced by the same impression as *the original*, or from the same matrix, or by means of photography, including enlargements and miniatures, by mechanical or electronic rerecording, by chemical reproduction, by optical imaging or by other equivalent techniques that accurately reproduce *the original*, including reproduction by facsimile machines if the reproduction is identified as a facsimile and printed on non-thermal paper."

(Emphases added.)

OEC 1001(2), in turn, defines "original" as follows:

" 'Original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An 'original' of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' "

to possibly just a customer or unaware third party." *Fifth*, consequently, the trial court erred in allowing the admission of the photographs.

Defendant's argument predicated on OEC 1003 fails for two interrelated reasons. First, although defendant's argument presumes that the operative "original" was the entire three to five minute portion of the videotape recording the burglary and criminal mischief incident, the photographs are not "duplicates" of that portion of the videotape. Rather, they are duplicates of a few discrete images captured on the recording. By way of analogy, consider a hypothetical in which a party photocopied five pages of a 500-page handwritten diary. Those photocopies would be "duplicates" of the individual pages, not of the entire diary—that is, the individual pages would be the operative "originals," not the entire diary. So too here: The photographs proffered by the state in this case are duplicates of a few individual original recorded images—and not of the entire videotape segment. That is, the operative "originals" here are those individual images, not the complete videotape segment. *See* 219 Or App 455 n 6 (setting out definitions in OEC 1001(1) and (2) of "duplicate" and "original," respectively).

Second, given that proper understanding of the operative "originals" and "duplicates" in this case, defendant's assertion of "unfairness" from the admission of "the duplicate in lieu of the original," OEC 1003(2), necessarily fails. Again, defendant posits that it is inherently unfair to admit the still photograph "duplicates" in lieu of the complete videotape "original." However, as we have just explained, that argument miscasts the proper comparison—the proper comparative "original" is not the complete videotape segment; rather, it is the discrete originally recorded image reproduced on each of the individual photographs. Here, defendant identifies no unfairness resulting from the introduction of each photograph "duplicate" in lieu of its corresponding, properly understood, "original" and we can discern none. *Cf. State v. Walton*, 311 Or 223, 809 P2d 81 (1991) (concluding, in a nonbest evidence rule context, that the defendant failed to show that the requisite prejudice flowed from the introduction of a partial video image in lieu of the full screen image from the

video). Accordingly, the trial court properly rejected defendant's contention that the best evidence rule barred the admission of the photographs.[7]

██      Finally, defendant argues that due process requires the suppression of the photographs. His argument in that regard parallels his due process argument against the admission of testimony recounting the contents of the missing videotape. We reject that argument, in this context, for the same reasons. *See* 219 Or App at 453-54.

On appeal, reversed and remanded; on cross-appeal, affirmed.

---

[7] We imply no view as to whether, depending on the circumstances, a trial court could properly exclude such evidence on other grounds not argued here.