TAYLOR, J.
 

 The defendant was accused of stealing videos from an adult video store. The main incriminating evidence presented at his grand theft trial was the testimony of the store manager regarding the content of a surveillance recording. Because the trial court reversibly erred in admitting this testimony, in violation of the best evidence rule, we reverse the defendant’s conviction and sentence.
 

 The state’s first witness at trial was Jacqueline Vega. Vega testified that on March 29, 2007, she was the acting night manager at University Video, an adult video and novelty shop in Lauderhill. Vega was working with Stacey Melvin, a sales clerk. The defendant entered the store around midnight. Vega, who recognized him from his visit there a week before, saw the defendant browsing through the DVD section located in the front-right side and in the back of the store. At that time he was the only customer in the store. The defendant remained in the store for about thirty to forty-five minutes. During that time, Vega and the defendant engaged in small talk. At no time did Vega ever see the defendant do anything to conceal, stash, or take away any of the stores videos. She did not realize any were missing until the next day when the manager called. Roughly a hundred people came in and out of University Video that night.
 

 The defendant had previously purchased DVDs from University Video. That night he wanted to open up a rental account. He presented some DVDs to Stacey Melvin and applied for a rental membership account. He gave Melvin his driver’s license and a credit card. When his credit card was declined, he gave Melvin another one, which was also declined. Vega and Melvin told the defendant that they would keep his information on file and that he could return to the store another time to apply for membership.
 

 The defendant started to leave but then told Vega that he had left his cell phone in the store. When Vega tried to locate it for him by dialing his phone number, the call went to voicemail. Somewhere near the
 
 *702
 
 “EA” DVD section the defendant found his phone and picked it up. He then left the store. Vega never observed him take anything from the store. He did not rent any DVDs or carry out any bags or merchandise in his hands.
 

 The next morning, the store manager of University Video, William Beach, opened the store and discovered about thirty empty DVD cases on shelves in the back of the store. The plastic cases had been opened and the DVDs removed from them. Beach explained that the DVD cases had been locked and could be opened only with a key. Over a foundation objection, the state introduced the key into evidence. Beach testified that the keys are ordered from a supply store. He testified that he saw no sign of forced entry into the store and found no misplaced key that was used to open the locked DVD cases. According to Beach, the value of the stolen videos was $973.60.
 

 Detective Andrew Kiefer was assigned to investigate the thefts from the video store. The store had a surveillance system of thirteen cameras mounted in the ceiling. They were aimed at high-theft areas of the store, mainly in corners not clearly visible to employees stationed at the counter. The cameras recorded one frame every few seconds. Beach turned the surveillance video over to Detective Kiefer during his investigation. The trial court admitted the surveillance video into evidence but sustained the defendant’s objection to the detective’s testimony about what he saw on the video.
 

 During Beach’s testimony the state was given permission to publish the contents of the surveillance DVD. The state, however, had some technical problems with the video and asked for a brief recess to call its IT technician. Shortly thereafter, the state told the court, “It seems like it is not going to happen. I will move on without it.”
 

 The state then questioned Beach about what he saw on the videotape. Defense counsel objected to Beach’s testimony about his observations of the video’s contents. After the court overruled the objection, the manager testified, “The defendant was on the video in the back comer of our store farther back opening the DVD boxes and putting the DVDs into his pocket.” When Beach testified that he assumed the defendant had a key to open the cases, the trial court sustained the defendant’s speculation objection. But Beach was allowed to testify that the video depicted the defendant crouching down and looking repeatedly at the counter as if he were “very concerned where the girls were in the store.” At that point, defense counsel asked for a sidebar and advised the court that the video did not actually show what the witness claimed.
 

 The trial court granted another recess for the state to contact its IT department. When court resumed, the state resolved its technical problems and published the surveillance recording to the jury. The state did not elicit any further testimony from Beach. After the state rested, the trial judge' viewed the surveillance video but denied the defendant’s motion for a judgment of acquittal.
 
 [1]
 

 
 *703
 
 The defendant took the stand and denied stealing anything from the store. He explained that he was searching the shelves for DVDs to rent and that he occasionally crouched down to either pick up his cell phone or to look at DVDs on the lower shelves. He testified that he did not realize there was a problem until he was applying for a job in California and an arrest warrant appeared on his background check. The jury returned a verdict finding the defendant guilty of grand theft. The trial court placed him on five years of probation and ordered him to pay restitution to University Video.
 

 On appeal, the defendant argues that the trial court erred in overruling his objection to the store manager’s testimony concerning the content of the surveillance recording. He contends that admitting this testimony violated the best evidence rule. We agree.
 

 While the admission of evidence is within the trial court’s discretion, that discretion is limited by the rules of evidence.
 
 Eliakim v. State,
 
 884 So.2d 57 (Fla. 4th DCA 2004). The “best evidence rule,” codified in section 90.952, Florida Statutes (2008), is titled, “Requirement of originals.” It provides:
 

 Except as otherwise provided by statute, an original writing, recording, or photograph is required in order to prove the contents of the writing, recording or photograph.
 

 While this is commonly known as the “best evidence rule,”
 
 see State v. Eubanks,
 
 609 So.2d 107, 109 (Fla. 4th DCA 1992), that term appears nowhere in the statute.
 

 Although duplicates are acceptable in most cases, see § 90.953, Fla. Stat. (2008), the admissibility of “other evidence” of the contents of a “writing, recording, or photograph” is governed by section 90.954, titled “Admissibility of other evidence of contents.” It provides:
 

 The original of a writing, recording, or photograph is not required, except as provided in s. 90.953, and
 
 other evidence of its contents is admissible token:
 

 (1) All originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith.
 

 (2) An original cannot be obtained in this state by any judicial process or procedure.
 

 (3) An original was under the control of the party against whom offered at a time when that party was put on notice by the pleadings or by written notice from the adverse party that the contents of such original would be subject to proof at the hearing, and such original is not produced at the hearing.
 

 (4) The writing, recording, or photograph is not related to a controlling issue.
 

 None of the enumerated exceptions apply here. The state’s inability to show the video recording due to temporary technical difficulties does not qualify the DVD as being “lost or destroyed” within the meaning of the statute. Further, the contents of the surveillance video were matters directly in issue. The trial court thus erred
 
 *704
 
 in admitting Beach’s testimony concerning the contents of the videotape.
 
 See Russell v. State,
 
 844 So.2d 725 (Fla. 5th DCA 2003) (finding that the trial court erred in permitting a police officer to testify about the contents of a convenience store surveillance tape but finding the error harmless in light of the other evidence of guilt).
 

 We disagree with the state’s contention that defense counsel’s objection to testimony about the video’s contents was inadequate to preserve the issue. To be preserved for appellate review, “an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.”
 
 Tillman v. State,
 
 471 So.2d 32, 35 (Fla.1985);
 
 see also Steinhorst v. State,
 
 412 So.2d 332, 338 (Fla.1982). Here, although the defendant did not specifically name “the best evidence rule” as a basis for his objection, we conclude that he adequately presented the issue to the trial court by objecting to the witness’s testimony about the video’s contents. As we noted earlier, the Florida statutes regarding admission of the content of writings, recordings, or photographs are not titled or specifically referred to as the “best evidence rule.”
 

 On the merits, the state argues that any error in allowing Beach’s testimony about what the tape depicted was harmless because the jury later had an opportunity to view the original tape recording for themselves. However, Beach’s questionable testimony that the tape showed the defendant engaged in criminal conduct may have predisposed the jury to view the tape as incriminating and contributed to their guilty verdict.
 
 See State v. DiGuilio,
 
 491 So.2d 1129, 1135 (Fla.1986) (holding that the harmless error test places the burden on the state to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or that there is no reasonable possibility that the error contributed to the conviction). No witnesses testified to seeing the defendant remove or possess the stolen videos. Unlike the facts in
 
 Russell,
 
 here the video was not merely cumulative of other evidence; it was the state’s sole evidence against the defendant. We thus cannot find the error harmless.
 

 Reversed and Remanded.
 

 GROSS, C.J., and STEVENSON, J., concur.
 

 [1]
 

 . After viewing the surveillance video, which was included in the record on appeal, we were baffled by the state’s reliance on the video for its theory that the defendant opened thirty cases and hid thirty DVDs in his clothing in plain view of the surveillance camera. Our observation of what the video depicts more closely coincides with the defense's version:
 

 At various occasions, Appellant can be seen taking encased DVDs off the shelves, looking at the front and back of the case, and returning them to the shelves or holding one or two in his hand. Appellant is
 
 *703
 
 shown, from time to time, crouching toward the store’s floor in the area of the lower shelves. He is also shown to at times touch or pat the pockets of his pants, at times look away from tire shelves and toward another area of the store and at other times speak to a woman passing between the store aisles.
 

 Though the time-lapse makes the tape somewhat shaky and the resolution poor, at no point does the video show the defendant opening DVD cartridges (with a key or otherwise) or concealing anything on his person. He is seen only removing DVDs from the shelf, looking at them, and then putting them back.