

# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**JARED JOHN SANTOS,**
Defendant-Appellant.

Supreme Court Case No. CRA23-015
Superior Court Case No. CF0731-18

## OPINION

## Cite as: 2025 Guam 15

Appeal from the Superior Court of Guam
Argued and submitted on October 23, 2024
Via Zoom video conference

Appearing for Defendant-Appellant:
Braddock J. Huesman, *Esq.*
Razzano, Walsh & Torres, P.C.
138 Murray Blvd., Ste. 100
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Nathan M. Tennyson, *Esq.*
Acting Deputy Attorney General (former)
Office of the Attorney General
Appellate & Writing Division
134 W. Soledad Ave.
Hagåtña, GU 96910



**E-Received**
12/30/2025 2:04:04 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

[1]     Defendant-Appellant Jared John Santos appeals his convictions for aggravated assault and possessing a firearm without a license stemming from a drive-by shooting in Hågat. The sole issue Santos raises on appeal relates to testimony about the contents of a security video purportedly showing events that led up to the shooting. The original video was never obtained by the government, and the only duplicate was destroyed by the investigating officer before trial.

[2]     Santos argues that the Superior Court violated Guam Rule of Evidence ("GRE") 1002 (often called the "best evidence rule") when it allowed two police officers to testify about the contents of the security video despite their failure to obtain the original and the destruction of the only duplicate. Santos further argues that although GRE 1004 provides an exception to the best evidence rule when the original is lost or destroyed, that exception does not apply to cases like this, where the proponent allegedly acted in bad faith. The People contend this issue was not preserved because "defense counsel did not articulate a specific objection to the admission of testimony regarding the unavailable surveillance footage." Appellee's Br. at 12 (July 3, 2024) (emphasis omitted).

[3]     We hold that the issue was preserved because there is sufficient context to identify the best evidence rule as the basis of Santos's objection at trial. However, we conclude that the trial court did not abuse its discretion in overruling Santos's objection to the officers' testimony. The challenged testimony was admissible under GRE 1004(1) because the original was destroyed by a third party—not the government. Because there is no hierarchy of secondary evidence, the officers' testimony regarding the video's content did not violate the best evidence rule. Any

potential error in allowing the officers to testify—despite their negligence or lack of diligence—was cured by the adverse inference instruction given to the jury.

[4]      We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.  Factual Background**

### 1.  The argument and subsequent shooting in Hågat

[5]      Santos was charged with attempted murder, possession of a firearm, and aggravated assault for shooting Pedo Peredo in a drive-by shooting in Hågat.[1]  Prior to the shooting, a brief verbal argument occurred at a gas station between the occupants of Peredo's and Santos's vehicles, which was captured by security cameras.

[6]      In the early morning of December 7, 2018, Peredo and two passengers arrived at the Hågat Mobil gas station in a yellow Mitsubishi Montero.  Peredo was driving and planned to refuel the vehicle before picking up his sister from work.  While Peredo was pumping gas, a dark blue SUV pulled into the gas station.  Although there are conflicting details from the prosecution's witnesses, they generally agreed that the two passengers of Peredo's vehicle got into a verbal argument with the two occupants of the SUV.  Santos was identified as the passenger in the blue SUV.  After the argument, the blue SUV pulled out of the gas station.

[7]      Peredo then pulled out of the gas station and began driving back to his uncle's apartment, when his sister called him.  Because his sister worked in the opposite direction, Peredo made a U-turn, then for some reason, Peredo parked on the side of the road.  Witnesses testified that after Peredo made the U-turn and parked, the blue SUV from the gas station pulled up alongside, and

---

[1] Specifically, Santos was indicted for Attempted Murder (as a First Degree Felony), Aggravated Assault (as a Second Degree Felony), Aggravated Assault (as a Third Degree Felony), three corresponding special allegations for use of a deadly weapon in the commission of a felony, and Possession of a Firearm Without a Valid Firearms Identification Card (as a Third Degree Felony).

the passenger of the blue SUV fired a shot from a rifle that hit Peredo in the abdomen. An occupant in Peredo's vehicle testified that he saw Santos through the SUV's open passenger window.

### 2. The investigation

[8]     Part of the incident at the Hågat Mobil was captured by closed-circuit security cameras. The gas station's surveillance system was managed by Secure Safe, a security company. According to Mobil's territorial manager, only Secure Safe personnel are authorized to extract and download footage from the surveillance system. The system automatically deletes footage after a specified period. It is undisputed that although several Guam Police Department ("GPD") officers had reviewed the surveillance video, the government never obtained the footage before it was automatically deleted.

[9]     GPD Detective Ricky James S. Camacho testified about viewing the security footage as part of his investigation. Detective Camacho revealed that he had recorded a "working copy" of the footage using his personal phone. Transcript ("Tr.") at 62 (Jury Trial, Jan. 12, 2021). Detective Camacho testified that he had deleted the recording from his phone at the close of his investigation, before he learned that the security footage was not retrievable from the surveillance system. Despite following up with the manager of Hågat Mobil "three or four times," Officer Camacho admitted that it was ultimately his fault for failing to retrieve the security footage. *Id.* at 56-57; Tr. at 19 (Jury Trial, Jan. 13, 2021). GPD Officer Joshua Togawa also testified about reviewing the security footage as part of his investigation. The footage reportedly showed Peredo's yellow vehicle arriving at the station at 12:20 AM. Shortly after that, a blue SUV arrived. Officer Togawa testified that the video showed an interaction between the parties which he interpreted as an argument.

**B. Procedural History**

[10]    Santos was tried jointly with a co-defendant, who was alleged to have been the driver of the blue SUV.  Santos's attorney mentioned the missing surveillance video during *voir dire* of potential jurors.  Before opening statements, while the parties and trial court were addressing several evidentiary matters, the prosecutor raised the best evidence rule:

> The next thing though, Your Honor, is I wanted to bring this up now while the jury's not in here.  So there is, obviously [defense counsel] voir dired on this, the lost surveillance.  The thing is, under the best evidence rule, I looked it up and I have all the case law to give Your Honor, that even though the actual surveillance was not eventually confiscated, as long as there are multiple people who saw it and they're all testifying consistently the same thing, we don't need the actual surveillance under the best evidence rule.  So I actually wanted to -- a ruling on that because that'll be some of the witnesses' testimony.

Tr. at 15 (Jury Trial, Jan. 5, 2021).  The trial court responded: "A witness can testify as to what they saw or heard or otherwise perceived by their own senses." *Id.*  Despite the prosecutor's stated desire to avoid a lengthy sidebar in front of the jury, the trial court observed that Santos was represented by seasoned trial attorneys and the court was not going to "pre-rule" on those evidentiary issues. *Id.* at 16-17.

[11]    During opening statements, the attorney for Santos's co-defendant told the jury that the police reviewed but did not preserve a security video:

> You will hear that there was a videotape of 2 vehicles meeting, one vehicle initially described as a light blue RAV-4 and the other vehicle, a yellow Mitsubishi SUV Montero.  Two police officers saw the video, but we haven't seen it, and neither will you.  That's because the evidence will show that the Attorney General's office and GPD weren't able to confiscate it and waited too long to get it.  Since they have the burden of proof in getting all of the evidence, good or bad, it is their job, not ours.

*Id.* at 34.  Santos's counsel declined to make an opening statement of their own.

[12]    Before Officer Togawa took the stand, Santos put his objection to the testimony about the surveillance video on the record: "[W]e discussed this at the beginning of the trial.  So rather than

impose a lot of interjections, objections, we're just going to make the record that we're going to object to the video. I also realize you're going to admit it. And so there'll just be a continuing objection . . . ." Tr. at 52 (Jury Trial, Jan. 11, 2021). Santos's attorney repeated that his objection was to "the general testimony about the video." *Id.* The trial court confirmed that "[t]he witness can testify to what he saw, which is what every witness can testify to, and then we'll deal with it as it goes along from there." *Id.* at 53. The following day, Santos renewed his standing objection to police testifying about the contents of the video. *See* Tr. at 74-75 (Jury Trial, Jan. 12, 2021) ("[W]e didn't object to the Officer's testimony about the video, but we still have the ongoing objection. . . . [I]t's the exact same objection.").

[13]     Although it is unclear whether it was requested by the parties, the trial court gave the jury the following adverse inference instruction after closing argument:

### 3C.  LOST OR DESTROYED EVIDENCE

> If you find that the government, through the Guam Police Department, intentionally failed to preserve the Mobil Surveillance video that the government knew or should have known would be evidence in this case, you may infer, but are not required to infer, that this evidence was unfavorable to the government.

RA, tab 151 at Instr. 3C (Jury Instrs., Jan. 21, 2021); *see also* Tr. at 10 (Jury Trial, Jan. 19, 2021). During closing arguments, Santos's attorney urged the jury to draw this inference.

[14]     Ultimately, the jury acquitted Santos of attempted murder and convicted him of the remaining charges. The trial court sentenced Santos to eight years of incarceration, with one year suspended. Santos timely appealed.

## II.  JURISDICTION

[15]     This court has jurisdiction over a criminal appeal from a final judgment of conviction. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-59 (2025)); 7 GCA §§ 3107(b), 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

### III. STANDARD OF REVIEW

[16]     Generally, we review the trial court's evidentiary rulings for an abuse of discretion "[w]hen proper objections were made . . . ." *See People v. Bosi*, 2022 Guam 15 ¶ 15. An evidentiary issue is preserved by a timely and specific objection, *see id.* ¶ 72, although failure to state the specific grounds for the objection may be excused if it was apparent from the context, *see* Guam R. Evid. 103(a)(1) (providing party must state specific ground of objection if "not apparent from the context"). "An 'abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made regarding admission of evidence.'" *People v. Kusterbeck*, 2024 Guam 3 ¶ 14 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Cyfred, Ltd.*, 2015 Guam 7 ¶ 31). "A court abuses its discretion by basing its decision on an erroneous legal standard . . . or if, in applying the appropriate legal standards, the [trial] court misapprehended the law with respect to the underlying issues in the litigation." *People v. Sharpe*, 2024 Guam 12 ¶ 14 (alteration in original) (quoting *People v. Jesus*, 2009 Guam 2 ¶ 18).

[17]     If the trial court committed a non-constitutional evidentiary error over an objection, reversal is required unless the prosecution shows, by a preponderance of the evidence, that the error was harmless. *See id.* ¶¶ 14, 58; *People v. Pinaula*, 2025 Guam 6 ¶ 10. Our harmless error inquiry involves analysis of several non-exclusive factors, including: "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted evidence; and (4) whether such evidence was cumulative of other properly admitted evidence." *Sharpe*, 2024 Guam 12 ¶ 59 (quoting *People v. Roten*, 2012 Guam 3 ¶ 41).

//

//

//

## IV.  ANALYSIS

### A.  Santos Preserved the Best Evidence Issue Because It Was Apparent that His Objection Was Based on GRE 1002

[18]     The People argue that the best evidence issue was not preserved because "defense counsel did not articulate a specific objection to the admission of testimony regarding the unavailable surveillance footage."  Appellee's Br. at 12 (emphasis omitted).  A challenge to admission of evidence is preserved for abuse of discretion review when a "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."  Guam R. Evid. 103(a)(1); *accord Bosi*, 2022 Guam 15 ¶ 72.  Because Santos's objection to testimony about the surveillance video did not specifically invoke the best evidence rule, our inquiry begins with whether the basis of the objection was apparent from the context.  We conclude that Santos's objection was sufficiently specific, and, therefore, this issue was preserved.

[19]     There is no litmus test to determine whether an objection is sufficiently specific.  21 *Wright & Miller's Federal Practice & Procedure—Evidence* § 5039 (2d ed. (Sep. 2025 Update)).  Generally, "objecting counsel need only name 'the generic evidentiary rule' in dispute," and "[c]itations to the specific rule numbers are unnecessary, provided the words chosen direct the trial court's attention to the ground with reasonable clarity."  *Id.*  Appellate courts consider whether, "[g]iven the context," the objection was "sufficient to identify the . . . issue and give the [trial] court the opportunity to correct any error that would result from admitting such testimony."  *See United States v. Cummings*, 858 F.3d 763, 772 (2d Cir. 2017); *United States v. Gordon*, 875 F.3d 26, 30 (1st Cir. 2017) ("Although surrounding circumstances sometimes may dress an otherwise bare objection and make the reason for the objection obvious, that principle does not apply where, as here, the record suggests a multitude of possible grounds for the objection." (citing Fed. R. Evid. 103(a)(1)(B)).  "If the claim advanced on appeal is reasonably similar to the objection made at

trial, the rule is satisfied . . . ." 21 *Fed. Prac. & Proc. Evid.* § 5039; *see also Dyer v. State*, 26 So. 3d 700, 704 (Fla. Dist. Ct. App. 2010) ("[A]lthough the defendant did not specifically name 'the best evidence rule' as a basis for his objection, we conclude that he adequately presented the issue to the trial court by objecting to the witness's testimony about the video's contents.").

[20]     Although Santos did not order a transcript of the jury selection, the record suggests that his attorney mentioned the lost video during *voir dire* of potential jurors. Before opening statements, the prosecutor alerted the trial court that the lost surveillance video would likely implicate the best evidence rule  At that time, the prosecutor sought a ruling on the admissibility of the testimony from officers who had reviewed the video. The court indicated any witness could testify about what they "saw or heard or otherwise perceived by their own senses," but said it would wait for an objection and would not "pre-rule" on any evidentiary issue. Tr. at 15-17 (Jury Trial, Jan. 5, 2021).During the opening statement of Santos's co-defendant, the jury was told that the police reviewed but failed to preserve the security video. Before Officer Togawa's testimony, Santos put his objection to the testimony about the surveillance video on the record. Santos repeated that his objection was to "the general testimony about the video." Tr. at 52 (Jury Trial, Jan. 11, 2021). The following day, Santos renewed his standing objection to police testifying about the contents of the video. *See* Tr. at 74-75 (Jury Trial, Jan. 12, 2021) ("[W]e didn't object to the Officer's testimony about the video, but we still have the ongoing objection. . . . [I]t's the exact same objection.").

[21]     Taken together, there is sufficient context to identify the best evidence rule as the basis of the objection. *See Cummings*, 858 F.3d at 772. The surrounding circumstances illustrate that Santos was objecting to the witnesses' testimony about the video's contents, and although he did not specifically name the best evidence rule, the reason for the objection was obvious. *See Gordon*, 875 F.3d at 30; *Dyer*, 26 So. 3d at 704. The basis of Santos's objection is apparent from context,

and the claim now advanced on appeal is reasonably similar to that objection. Thus, the issue was preserved, and we therefore review for an abuse of discretion.

## B. The Trial Court Did Not Err in Admitting the Officers' Testimony Because the Original Video Was Destroyed by a Third Party

[22] Santos argues that under the best evidence rule, "if a party wants to introduce evidence of what is (or is not) on a video recording, the court must require the party to provide an original recording." Appellant's Br. at 6 (June 3, 2024). Santos acknowledges that "the original of a video recording is not always required to prove its contents." *Id.* at 11. But he contends that when an original is destroyed, "other evidence" of its contents is admissible only if the proponent's bad faith did not contribute to its destruction. *See id.* He contends that, in this case, the officers should not have been permitted to testify about the contents of the surveillance video because destruction of the original resulted from the government's bad faith. *See id.* at 12.

[23] The People counter that they, "through their public prosecutor, never had an original of the surveillance footage. As a result, the public prosecutor, the proponent, could not have been responsible for destroying the original surveillance." Appellee's Br. at 16. The People contend that at worst, destruction of the video resulted from the negligence of either GPD, Mobil, or Secure Safe. *See id.* at 18. We conclude that although prosecutors will be held responsible for bad faith destruction of originals by police, the original in this case was destroyed by a third party. There is no hierarchy of secondary evidence. Because the prosecution was not required to present a duplicate, destruction of the duplicate video did not bar other secondary evidence of the video's contents. In such cases, the proper remedy for a defendant is an adverse inference instruction, which was given in this case.

//

//

### 1. The best evidence rule bars secondary evidence in a criminal prosecution when originals are destroyed by the government in bad faith

[24]    GRE 1002 is based on its federal counterpart.[2]  Both rules "state[] the central principle of the so-called best-evidence doctrine; the original usually is required to prove the contents of a writing, recording, or photograph."  *See* 31 *Fed. Prac. & Proc. Evid.* § 7181 (2d ed.); Guam R. Evid. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required . . . .").  However, there are several exceptions to this general rule.  *See* Guam R. Evid. 1004(1)-(4); Fed. R. Evid. 1004(a)-(d).[3]

[25]    GRE 1004 provides, in pertinent part: "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."  Guam R. Evid. 1004(1).[4]  This court has observed that "[f]ederal case law illustrates the expansive basis of this evidentiary exception," and that "[a] party must allege bad faith immediately and emphatically if they want secondary evidence excluded."  *Shorehaven Corp. v. Taitano*, 2001 Guam 16 ¶ 10.

[26]    When the People offer secondary evidence at a criminal trial under Rule 1004(1), the focus is on whether the government—including both prosecutors and police—lost or destroyed the original in bad faith.  *See, e.g.*, *Baker v. State*, 2022 WY 106, ¶ 21, 516 P.3d 479, 483 (Wyo. 2022)

---

[2] FRE 1002 underwent a stylistic amendment in 2011.  *See* Fed. R. Evid. 1002 advisory committee's note to 2011 amendment.  Given the similarities between the GRE and Federal Rules of Evidence, we find case law interpreting the Federal Rules to be persuasive.  *See People v. Sharpe*, 2024 Guam 12 ¶ 18 n.5.  To the extent other jurisdictions have also modeled their evidence rules on the Federal Rules, we find those decisions instructive as well.

[3] Restyling of the Federal Rules has resulted in the exceptions being designated as "a" through "d" rather than as "1" through "4."

[4] The People contend that the contents of the video were a collateral matter under GRE 1004(4).  Appellee's Br. at 19-20 (July 3, 2024).  Because we find no reversible error under subsection (1), we need not address this alternative theory.  We note, however, that GRE 1004(4) "describes secondary evidence that presents a low risk of fraud or mistake because it concerns only collateral matters.  The proponent has little motive to fraudulently create such secondary evidence because, since it is not closely related to a controlling issue, the potential benefits of fraud are low."  31 *Fed. Prac. & Proc. Evid.* § 8017 (2d ed.).  We are cautious of labeling the contents of the footage in this case a collateral matter, especially because GPD's destruction of the only duplicate permitted the jury to infer that it would have been favorable to Santos.  The footage may have been relevant to identifying Santos and establishing his motive, as it placed him at the scene of the argument that preceded the shooting.

("[T]he *State* did not destroy the original in bad faith." (emphasis added)); *cf. People v. Robinson*, 38 N.Y.S.3d 601, 602 (App. Div. 2016) ("The lost video segment was never in the possession of the police or prosecution . . . ."). Generally, "the state's failure to obtain evidence in a l party's possession that the third party later, and without notice to the state, loses or destroys, does not mean that the state has lost or destroyed the evidence." *State v. Nelsen*, 183 P.3d 219, 223-24 (Or. Ct. App. 2008) (holding that state did not destroy videotape because third party "did not act at the state's direction or was not otherwise an agent of the state"). "[P]roponents need not prove their diligence in obtaining the original before destruction to admit a duplicate or other evidence of the contents of a recording." *People v. Smith*, 2021 IL App (5th) 190066, ¶ 54 (citing Ill. R. Evid. 1004(1), Committee Comments; *United States v. McGaughey*, 977 F.2d 1067, 1071 (7th Cir. 1992)), *aff'd*, 2022 IL 127946, ¶ 54. In other words, "Negligence, or a lack of diligence . . . does not qualify as bad faith under the rule." *Baker*, 2022 WY 106, ¶ 19. However, "bad faith may be inferred where the reliability of the proponent's secondary evidence is suspect." 31 *Fed. Prac. & Proc. Evid.* § 8014 (2d ed.); *accord Baker*, 2022 WY 106, ¶ 19 (stating that fabrication of secondary evidence supports finding of bad faith).

### 2. Although GPD's negligence or lack of diligence contributed to the original video's destruction, the government did not destroy the original

[27] Santos claims that "[a] trial court errs in introducing testimony about what is on a video unless the video is destroyed through no fault of the Government." Appellant's Br. at 2. Although we cannot condone any role the government may play in the destruction of original documents or recordings, Santos misstates the law of evidence. Secondary evidence is admissible even when the government's negligence or lack of diligence is the reason for an original's destruction. *See Baker*, 2022 WY 106, ¶ 19. The government's lack of diligence in obtaining an original from a third party before its destruction does not automatically impute the destruction to the government.

*See Nelsen*, 183 P.3d at 223-24. The proper analysis under GRE 1004(1) is whether the government destroyed the originals, and whether it did so in bad faith. Even when it is the government's "fault" that originals were destroyed, the best evidence rule bars secondary evidence only in cases of bad faith. The trial court did not abuse its discretion because the government did not destroy the original video in this case.

[28]     It is undisputed that the original surveillance video was in the possession of a third party. It is further undisputed that the original video was never in GPD's possession, and that the government failed to obtain the original video. Instead, a third party, which had kept possession of the original video, allowed the footage to be automatically overwritten. Santos does not allege that either Mobil or Secure Safe were acting at the government's direction when they allowed the video to be overwritten, nor does he allege they were otherwise agents of the government. *See Nelsen*, 183 P.3d at 223-24. That a third party destroyed the recording, without notice to the government, does not mean that the government destroyed the evidence. *See id.*

[29]     Although Santos's objection was sufficient to preserve this issue for appeal, because he did not "immediately and emphatically" allege that the *original* was destroyed by the government in bad faith, the trial court did not abuse its discretion in overruling the objection.

### 3. Because there is no hierarchy of secondary evidence, the officers could testify to the contents of the video despite destroying the only duplicate

[30]     Santos argues that the trial court allowed police to "testify about the Video they destroyed in violation of the best-evidence rule." Appellant's Br. at 6. He further argues that the police's destruction of the duplicate video is evidence of the government's bad faith. *See id.* at 12. Although Santos's argument appears intuitive, under the Rules of Evidence, there is an important distinction between the destruction of originals and the destruction of duplicates. Under the GRE, the "best evidence rule" applies and bars secondary evidence only if the proponent, in bad faith,

destroys the original. Otherwise, any secondary evidence of content is admissible—there is no hierarchy of secondary evidence. *See Shorehaven*, 2001 Guam 16 ¶ 10. Consequently, the rules of evidence do not require the government to produce a duplicate in favor of oral testimony. Although a trial court should never ignore government spoliation of evidence, GRE 1004 is not the correct vehicle for addressing the destruction of a duplicate.

[31]     There is some intuitive sense to Santos's argument that a witness should not be permitted to testify about the contents of a document when the original is missing, and the proponent destroyed the only copy. The common law best evidence rule "[r]ecogniz[ed] what amounted to a hierarchy of secondary evidence, [and] it preferred the most reliable form." 5 *Federal Evidence* § 10:26 (4th ed. (July 2025 Update)). However, the adoption of Federal Rule 1004 rejected degrees of secondary evidence. *See Shorehaven*, 2001 Guam 16 ¶ 10 ("[T]he Rules of Evidence do not establish a hierarchy of secondary evidence; anything that tends to demonstrate the writing's contents may constitute secondary evidence." (alteration in original) (citation omitted)). Thus, if the requirements of Rule 1004(1) are met, a proponent "may offer testimony describing content by a witness who saw the original, even if the proponent also has in his possession a typewritten 'copy' made from the original, which would arguably be more reliable proof of content." 5 *Federal Evidence* § 10:26. In other words, "the Rule expresses no preference for duplicates or for any other form of proof." *Id.*

[32]     "Rule 1004 appears to pave the way for 'other evidence' of content when the proponent is excused from producing the 'original,' regardless of the availability of any 'duplicate' as that term is defined in Rule 1001(e)." *Id.* Assuming that nonproduction of the original is excused, the rules would permit a party holding a duplicate to offer a testimonial account of the content of the original instead—although doing so would often be a poor strategic decision. *See id.*

**[33]** Santos's argument is premised on the incorrect assumption that "duplicates are not only *preferred* but also *required* when the proponent has one." *See id.* Under GRE 1004(1), even if the duplicate video had not been deleted, the officers could have testified to its contents, and the prosecution was under no obligation to introduce the duplicate into evidence. That is not to say the government's actions in this case were unproblematic. *See* 5 *Federal Evidence* § 10:26 ("An honorable motive for introducing testimonial evidence on the terms of a lost original, where the proponent has in his possession a duplicate, is hard to imagine, and the adverse party may suggest (and the jury may choose to draw) an unfavorable inference from such strategy."). But under the GRE, duplicates are not treated the same as originals for the best evidence rule. *See id.* ("If it were desirable to force production of duplicates to the same extent as originals, rather simple amendments would seem necessary, and the drawback would be the introduction of new and cumbersome problems of administration. The proponent would have to explain not only his failure to produce the original, but also his failure to obtain a 'duplicate,' thus multiplying the inquiries which Rule 1004 would generate." (footnote omitted)).

> **4. Even if a trial court determines not to exclude secondary evidence, it has discretion to pursue a wide range of responses to level the evidentiary playing field and sanction improper conduct**

**[34]** Santos argues that it is "unacceptable" and "creates a dangerous situation" to allow officers to testify about the contents of a security recording when they had failed to subpoena the original and then "purposefully delete[d]" the only copy. Appellant's Br. at 12. Although we conclude the testimony was admissible under GRE 1004(1), the best evidence rule is not the only concern in situations such as this. Even if a trial court determines not to exclude secondary evidence, it retains discretion to pursue a wide range of responses, both to level the evidentiary playing field and to sanction improper conduct. *Cf. Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.

1995).  Because the trial court gave an adverse inference instruction in this case, any evidentiary error alleged by Santos would be harmless.

[35]     While we hold that the trial court did not abuse its discretion in admitting the secondary evidence of the video's contents, the government proceeds at its own peril should it destroy material evidence.  *Cf. Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (holding that under certain circumstances, state's failure to preserve potentially exculpatory evidence constitutes due process violation); *People v. Superior Court (Laxamana)*, 2001 Guam 26 ¶ 50 (ordering GPD to "cease its routine practice of destroying field notes and to institute procedures that preserve them").  Wright and Miller explain, "Whether or not the court decides to exclude secondary evidence, other consequences may flow from a party's destruction of originals."  31 *Fed. Prac. & Proc. Evid.* § 8014.  Other consequences may properly flow from a party's destruction of duplicates as well, especially in cases such as this where the government's negligence or lack of diligence may have contributed to destruction of the original.  We find the Fourth Circuit's discussion of these potential consequences persuasive:

> A party's failure to produce evidence may, of course, be explained satisfactorily.  When a proponent cannot produce original evidence of a fact because of loss or destruction of evidence, the court may permit proof by secondary evidence.  But when a proponent's intentional conduct contributes to the loss or destruction of evidence, the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct.  Even if a court determines not to exclude secondary evidence, it may still permit the jury to draw unfavorable inferences against the party responsible for the loss or destruction of the original evidence.  An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.

*Vodusek*, 71 F.3d at 156 (citations omitted).  Thus, even when secondary evidence is admissible, the trial court has discretion to give an adverse inference instruction where the government's

willful conduct resulted in loss or destruction of the most reliable remaining evidence of the original's content. *Cf. People v. Ojeda*, 2025 Guam 5 ¶ 35 (observing that "the government had a duty to make reasonable efforts to preserve and obtain the surveillance footage and should not be able to gain an advantage through its own negligence" while passing on question of whether adverse inference instruction was required because adequate substitute was given).

**[36]** The trial court gave the jury the following adverse inference instruction:

> If you find that the government, through the Guam Police Department, intentionally failed to preserve the Mobil Surveillance video that the government knew or should have known would be evidence in this case, you may infer, but are not required to infer, that this evidence was unfavorable to the government.

RA, tab 151 at Instr. 3C (Jury Instrs.). The concerns raised by Santos in this appeal are not trivial. However, the Rules of Evidence did not bar the officers' testimony about the contents of the security video—regardless of the status of any potential duplicates. Any potential error was cured by the adverse inference instruction given to the jury.

## V. CONCLUSION

**[37]** Santos's objection was sufficiently specific to preserve the best evidence issue for appeal. However, the best evidence rule did not prohibit the police from testifying to the contents of the destroyed surveillance video because the government did not destroy the video. In cases where the original is destroyed, secondary evidence is admissible unless the government destroyed the original in bad faith. Here, the original was destroyed by a third party, and, therefore, any secondary evidence was admissible to prove the contents of the video. Because there is no hierarchy of secondary evidence, oral testimony was admissible despite GPD destroying the only duplicate.

**[38]** The fact that officers' testimony was admissible under GRE 1004(1) does not make the conduct of GPD irrelevant. Even if a trial court determines not to exclude secondary evidence, it

retains discretion to pursue a wide range of responses, both to level the evidentiary playing field and to sanction improper conduct. The trial court did just that by giving an adverse inference instruction in this case. We conclude that any evidentiary error alleged by Santos would be harmless, as any potential error was cured by the adverse inference instruction given to the jury. We **AFFIRM**.


| /s/ | /s/ |
|:---:|:---:|
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


| /s/ |
|:---:|
| ROBERT J. TORRES |
| Chief Justice |