# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2024-2740
Lower Tribunal No. 2023-CF-006358

_____

DEMOND LAVETTE MOORE,

Petitioner,

v.

STATE OF FLORIDA,

Respondent.

_____

Petition for Writ of Prohibition to the Circuit Court for Polk County.

May 2, 2025

WOZNIAK, J.

Demond Lavette Moore petitions for a writ of prohibition to prevent his prosecution for second-degree murder.[1] Moore alleges that he has immunity under section 776.032, Florida Statutes (2023), Florida's Stand Your Ground law. We agree.

---

[1] Moore correctly proceeds under a writ of prohibition. See Boston v. State, 326 So. 3d 673, 677 (Fla. 2021) ("[A] defendant who avails him or herself to a pretrial immunity hearing and who believes legal error was committed at the pretrial immunity hearing may still seek relief by filing a petition for a writ of prohibition." (emphasis omitted)).

Moore was charged with second-degree murder following a shooting that took place in Davenport. He filed a motion to dismiss the Information based on his claim of Stand Your Ground immunity. In it, he stated that some hours before the incident, law enforcement had been dispatched to investigate a call of a suspicious person, Quanita Offutt, who was intoxicated and walking and dancing in the road; she was rapping while the officers asked her questions. The officers determined Offutt was not a danger to herself or others and left. After this encounter with law enforcement, Offutt, whom Moore had never met, approached Moore as he was sleeping in a chair outdoors and attacked him with a chair. Offutt threatened to kill Moore and his entire family. This initial encounter ended, and Offutt wandered away. Moore then proceeded to get a beer out of his cooler, which was in the bed of his truck parked nearby. As he was getting his beer, Offutt reapproached Moore and pointed a gun at him. They fought, and both ended up in the bed of the truck. Moore obtained control of the gun. While still in the truck bed, Offutt reached downwards and appeared to be grabbing for an object. Moore, knowing there were various potentially deadly objects, including a machete, in the back of the truck and fearing for his life, shot her in the leg. Offutt died from that injury.

At the evidentiary hearing, the trial court determined that Moore had successfully established a prima facie claim of self-defense immunity. We agree. At that point, the burden shifted to the State to prove, by clear and convincing evidence,

2

that Moore was not entitled to self-defense immunity. See § 776.032(4), Fla. Stat. Several witnesses testified on behalf of the State.

Mary Hall, Moore's neighbor, testified that she saw blood on the side of Moore's truck from across the street, and upon approaching the truck, she saw Offutt's body in the truck bed. Hall called 911. Hall testified that she did not hear any fighting or a gunshot and did not know how Offutt ended up in the truck bed. Hall described Moore as being less than five feet four inches tall and "pretty skinny."

Officer Octavious Taylor responded to the scene. He found Offutt, who had a bottle opener in her hand, in Moore's truck bed. Taylor was able to identify Offutt because he responded to the earlier call concerning Offutt's erratic behavior. Taylor testified that he saw blood on the side of the left rear fender of Moore's truck[2] and observed several toolboxes and a variety of tools in the truck bed. Taylor detained Moore for interfering with his investigation; Moore did not leave when Taylor explained that the area surrounding Moore's truck was an active crime scene. Moore was released 20 minutes later. Taylor did not observe any injuries on Moore or any blood on his clothing.

Sergeant Mario Dixon also responded to the scene. He testified that he saw blood on the rear quarter panel of the truck. Dixon also observed Offutt in Moore's truck bed, lying on some tools; there was an injury to Offutt's upper right thigh and

_____

[2] A picture of the blood on Moore's truck was entered into evidence.

bruising on her face. Dixon did not see a firearm, but did see a casing three to four feet from the truck. Dixon, who interacted with Moore after Taylor detained him, noted that Moore appeared intoxicated, but Dixon did not see any injuries on Moore or blood on his shirt.

Officer Sean Bruner, another responding officer, observed Offutt in Moore's truck bed. Bruner testified that it would have been difficult, given the number of tools in the truck bed, for two people to have a "full-on brawl." Moore's counsel objected to Bruner's testimony as speculative, but that objection was overruled.[3] Bruner also testified that he believed that Offutt's body was thrown on top of the toolboxes in Moore's truck bed, citing "common sense" as his guide.

Next, Carol Greenwell, an analyst from the Florida Department of Law Enforcement, testified that the blood on the side of Moore's truck belonged to Offutt. Greenwell also testified that Moore's DNA was recovered from underneath Offutt's fingernails.

Detective Daniel Grant, who arrived at the crime scene after Moore's truck and Offutt's body had been removed, did not locate a firearm at the scene. Although Grant did not speak with Moore, Grant did speak with Offutt's mother, who

---

[3] We express no view on whether the trial court was correct to overrule that objection.

4

indicated that Offutt had been drinking heavily before leaving her house the night she was shot.

Detective Angel Shireman later took over the investigation from Grant. Shireman testified that Moore did not volunteer to law enforcement that he shot Offutt in self-defense. Shireman explained that, given the number of tools and equipment in the truck bed, there was not a lot of space for maneuvering if there was a fight. Based on his review of the blood on the outside of the truck, Shireman opined that someone rolled Offutt over the side of the truck and into the truck bed. Shireman explained that he interviewed several witnesses, and none of them had seen the incident that led to the shooting. On cross examination, Shireman explained that one unidentified witness had said Moore had stated, "I was fighting with that bitch for 30 minutes" and no one came to help him. Shireman reviewed a video showing events that occurred after the shooting and testified that he could see Moore with a handgun in his pant pocket in that video. Moore's counsel rightly objected to Bruner's testimony as violating the best evidence rule because instead of playing the video, Bruner testified as to his observations of the video. That objection was also overruled.

Moore did not call any witnesses or present evidence.

In its order denying Moore's motion to dismiss, the trial court recounted the testimony of each witness and concluded that the State had met its burden to prove

5

by clear and convincing evidence that Moore was not entitled to immunity because "a reasonable and prudent person situated in the same circumstances as [Moore] would not have used the same force as [Moore]." It made its determination "based on these circumstances":

- [Moore] told at least one person he and [Offutt] fought. No injuries or blood were observed on [Moore].

- A firearm was also not located at the scene, but on video, [Moore] was captured with a gun on his person.

- [Moore] did not testify at the hearing and presented no evidence in his defense to this Court.

- There was no testimony presented to the Court that [Offutt] had a gun and [Moore] shot her in self-defense. Notably, [Moore] failed to present any evidence to establish that he reasonably believed that his use of force was necessary to prevent imminent death or great bodily harm to himself.

We turn now to explain why we grant Moore's Petition.

Section 776.032(1) provides that "[a] person who uses . . . force as permitted in s. 776.012 . . . is justified in such conduct and is immune from criminal prosecution . . . ." Section 776.012, Florida Statute (2023), provides:

> A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.

6

If a defendant raises a prima facie claim of self-defense immunity, then the State bears the burden to overcome that claim by clear and convincing evidence. § 776.032(4), Fla. Stat.

We apply a mixed standard when reviewing a trial court's order denying a defendant's claim of immunity; we review the trial court's legal conclusions and application of law to facts de novo and its factual findings for competent, substantial evidence. See Bouie v. State, 292 So. 3d 471, 479 (Fla. 2d DCA 2020).

We turn first to two evidentiary issues: the admission of testimony, over objection, that Moore was seen in a video, taken post-shooting, with a gun in his pocket; and the trial court's reliance on Moore's silence as evidence of his guilt.[4]

First, the court's finding that Moore had a gun on his person after the shooting is not supported by competent, substantial evidence because the testimony underlying that finding violated the best evidence rule. §§ 90.952 & 90.954, Fla.

_____

[4] The State argues that our review of evidentiary issues is precluded because such claims should be brought in a petition for writ of certiorari and Moore's time for doing so has elapsed. As noted above, our standard of review is, in part, a review of the trial court's factual findings for competent, substantial evidence. Accordingly, we are dutybound to review errors in evidence underlying the trial court's factual determinations. Facts based only on inadmissible evidence are facts without a competent, substantial evidentiary backing. See Savage v. State, 120 So. 3d 619 (Fla. 2d DCA 2013) ("Competency of evidence refers to its admissibility under legal rules of evidence." (quoting Dunn v. State, 454 So. 2d 641, 649 n.11 (Fla. 5th DCA 1984) (Cowart, J., concurring specially))); see also Damask v. Ryabchenko, 329 So. 3d 759, 764 (Fla. 4th DCA 2021) ("Inadmissible hearsay cannot be competent, substantial evidence." (citing B.L. v. Dep't of Child. & Fams., 174 So. 3d 1125, 1126 (Fla. 4th DCA 2015))).

Stat. (2023). Moore's counsel correctly objected to the testimony on which this finding was based. See, e.g., Dyer v. State, 26 So. 3d 700, 702-04 (Fla. 4th DCA 2010) (holding that a store manager was improperly allowed to testify that the store's surveillance video showed the defendant opening DVDs and putting DVDs in his pocket); Russell v. State, 844 So. 2d 725, 727-28 (Fla. 5th DCA 2003) (finding best evidence rule violation where a detective testified that a video showed the defendant placing a large amount of change on the counter of a 7–Eleven after a large quantity of change had been stolen from a Taco Bell). Accordingly, the trial court abused its discretion in allowing this evidence, and the court's finding that Moore had a gun on his person after the shooting is not supported by competent, substantial evidence.[5]

Second, we hold that the trial court improperly relied on Moore's silence in determining he was not entitled to immunity. This it could not do. See State v. Horwitz, 191 So. 3d 429, 441 (Fla. 2016) ("The defendant should not be compelled to make the choice between testifying—with the possibility that his or her earlier silence might be used to impeach him or her—and not testifying—thereby, under the State's view, allowing the State to use the defendant's earlier silence as substantive evidence of the defendant's guilt."). Accordingly, we hold that Moore's

---

[5] We also note that Moore's possession of a gun after the fact does not contradict or otherwise tend to disprove his claim that Offutt initially had possession of a gun or Moore's claim that he reasonably believed that using deadly force against Offutt was necessary to prevent imminent death or great bodily harm to himself.

"failure to testify" is not competent, substantial evidence tending to disprove his claim of self-defense. Within that same vein, the trial court's reliance on Moore's failure to present any evidence of his claim was also improper. The statute is clear: Moore's burden was only to raise a prima facie claim of self-defense. The trial court determined that Moore met that burden. At that point, the burden shifted to the State to prove by clear and convincing evidence that Moore did not act in self-defense. Accordingly, Moore was not required to submit any evidence, and the trial court erred in considering the lack of evidence presented by Moore and then using that lack of evidence to fill in the gaps in the State's evidence where the State bore the burden to prove by clear and convincing evidence that Moore did not act in self-defense.

Having stripped away these findings, we are left with only the trial court's attributing the lack of blood or injury on Moore as a fact tending to disprove Moore's claim. However, Moore never claimed he was injured or bloodied in the ensuing fights between himself and Offutt, only that he was attacked twice-over and in fear for his life. Accordingly, that Moore was unbloodied and uninjured after having been attacked does not disprove or discredit Moore's claim of self-defense.

Because the facts on which the trial court relied were inadmissible or wholly unsupportive of its conclusion, we hold that the trial court erred by ruling that the State met its burden to overcome Moore's claim of self-defense. Because the State

9

failed to meet its burden, Moore's prima facie claim of self-defense stands, and he is immune from further prosecution. Accordingly, we grant the Petition but withhold issuance of the writ, confident that the trial judge will grant the underlying motion.

PETITION GRANTED; WRIT WITHHELD.

MIZE and BROWNLEE, JJ., concur.


Blair Allen, Public Defender, and Daniel Muller and Stephen P. Pincket, Assistant Public Defenders, Bartow, for Petitioner.

James Uthmeier, Attorney General, Tallahassee, and Analise V. Walker, Assistant Attorney General, Tampa, for Respondent.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED